50 CCPA

**Application of Benjamin J. CHROMY and Philip H. Allen.**

**Patent Appeal No. 6952.**

United States Court of Customs and Patent Appeals.

June 10, 1963.

Allen & Chromy (Ben J. Chromy, of counsel), for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the action of the Patent Office Board of Appeals affirming the examiner's rejection of claims 31, 32, 36 and 43 of appellants' application,[1] for reissue of their patent No. 2,727,683, granted them on December 20, 1955.[2] Forty-six claims are allowed.

The application relates to an electronic registering apparatus utilizing a plurality of light-sensitive, variable impedance devices interconnected by means of light source stages. The disclosed apparatus includes a plurality of stages each of which includes a light-responsive variable resistance in series circuit with a thermionic tube, and control electrodes of the tube connected to have impressed thereon electrical pulses from a selection mechanism. When light from a tube is not impressed on a light-responsive variable resistance, the value of such resistance is so large as to hold the anode voltage of the tube with which it is connected at a value below that at which a pulse .on the control electrode can render the tube conducting. However, the tubes are such that they provide light, as by fluorescing or glowing, when conducting and the tubes are so arranged that, when the tube in one stage is conductive, light from it will fall on the light-sensitive resistance of the succeeding stage to so reduce its magnitude that the next pulse will be effective to render the tube in series therewith conductive. The latter tube, upon becoming conductive, results in the next succeeding tube being similarly rendered conductive by the next electrical pulse from the selective mechanism.

Light from that tube also falls on a light-responsive quenching cell connected across the plate-to-cathode circuit of the preceding tube. The light reduces the impedance of the cell to such a value that the shunted tube becomes noncon-

---

1. Serial No. 16,906, filed February 8, 1960, for Registers.

2. Appellants state in their brief that the application on which patent No. 2,727,-683 was granted was filed on January 11, 1946.

ducting. Thus the tube of only one stage of the circuit is conductive at a time and the stage in which that tube is connected is indicative of the number of pulses that have been applied to the circuit. Also only one tube, that of the next succeeding stage, is conditioned to respond to the next pulse.

The four claims on appeal were submitted by appellants for the purpose of interference and were derived from the following patents:

| Loebner | 2,895,054 | July 14, 1959 |
| Loebner | 2,907,001 | September 29, 1959 |
| Reis | 2,900,522 | August 18, 1959 |

Claim 31 was copied in an attempt to become a party in Interference No. 88,-948 and is said to have come to appellants' attention upon examining the file record of the Reis patent. Claim 32 is claim 5 of Reis in modified form. Claim 36 is claim 4 of Loebner No. 2,907,001 in modified form and claim 43 is claim 3 of Loebner No. 2,895,054.

Claims 31 and 43 are illustrative and read:

"31. An electrooptical device comprising a plurality of stages, each stage individually including at least one voltage responsive light source and at least one photoresponsive element associated therewith, said light source comprising a cell having a threshold voltage only above which it becomes luminant, means for applying a bias potential across each light source and photoresponsive element, each element being optically coupled to at least the light source of the stage with which it is associated to receive light therefrom and being electrically coupled to the light source of a succeeding stage, said device further comprising means for supplying an input signal for controlling the voltage across the light source of any given stage in response to the lumination of the light source in the stage preceding said given stage.

"43. An electroluminescent device comprising a plurality of stages; each of said stages including individually an electroluminescent element, a plurality of photo-conductive elements, means for energizing a first electrical series combination that includes said electroluminescent element and a first one of said photoconductive elements, means for connecting a second one of said photoconductive elements in parallel with said electroluminescent element; said device further comprising means for optically coupling said electroluminescent element of one of said stages to said parallel photoconductive element of another one of said stages."

The appealed claims stand rejected as being broader than any claim in the original patent and therefore unpatentable to appellants by reason of 35 U.S.C. 251, which states:

"No reissued patent shall be granted enlarging the scope of the claims of the original patent unless applied for within two years from the grant of the original patent."

Appellants contend that the broad claims in their patent, referring only to claim 12 specifically, are broader in scope than the appealed claims. Claim 12 of the patent reads:

"12. A registering circuit comprising a pair of thermionic devices, a light sensitive device operatively related to said thermionic devices and electrically connected to condition the other of said thermionic devices for operation."

The issue centers on the definitions of the light sources in the appealed claims and the term "thermionic devices" by

which the corresponding elements are said to be defined in claim 12. In claim 31, the source is said to be "a cell having a threshold voltage above which it becomes luminant;" in claim 32, "a light source having a threshold voltage above which it becomes luminant;" in claim 36, "electric discharge means for producing light;" and in claim 43, "an electroluminescent element."

The resolution of that issue must be on the basis that a claim is broadened if it is broader in any respect than the original claims, even though it may be narrowed in other respects. As this court stated in In re Rogoff, 261 F.2d 601, 46 CCPA 733:

"It is well settled that a claim is broadened, so far as the question of right to reissue is concerned, if it is so changed as to bring within its scope any structure which was not within the scope of the original claim. In other words, a claim is broadened if it is broader in any respect than the original claim, even though it may be narrowed in other respects. Fox Typewriter Co. v. Corona Typewriter Co., 6 Cir., 282 F. 502; In re Bostwick, 102 F.2d 886, 26 CCPA, Patents, 1117; Schenk [et al.] v. United Aircraft Corp., D.C., 43 F.Supp. 679; and Mercoid Corp. v. Milwaukee Gas Specialty Co., D.C., 33 F.Supp. 681.

In their application, appellants describe their light source as follows:

"The register * * * consists of a plurality of thermionic tubes * * * which may be of the three-electrode or multiple-grid type with directly or indirectly heated cathodes or filaments or cold cathode type, as desired. Furthermore, these tubes are preferably of the gas discharge type provided with an evacuated envelope of glass or similar transparent or translucent material coated on the inside over at least a part of the surface with a fluorescent material, such as willemite, scheelite, zinc, [sic] sulphide or the like. A small amount of mercury is provided in the inside of each of these envelopes for the purpose of generating ultraviolet radiations when the respective tubes are fired or triggered by suitable electrical pulses applied to the grids thereof, the aforesaid ultraviolet radiations being employed to bombard the fluorescent coatings inside of the triggered tubes and the fluorescent coatings caused to fluoresce. The fluorescent light is employed to enable the various tubes of the register as will be apparent from further paragraphs of this description and it is of course obvious that instead of this fluorescent light, the light produced by an ionized gas may be used. In this case the thermionic tubes of the registers need not be provided with fluorescent coatings as described about [sic] but the envelopes thereof may simply be filled with a suitable atmosphere of inert gas, such as, neon, argon, helium, krypton, xenon or nitrogen or suitable mixtures thereof with or without a small drop of mercury after the air is evacuated from the envelopes."

Appellants urge that they "selected the term 'thermionic device' to mean any light source whether it be a form of electroluminescent light source such as a fluorescent phosphor or an ionized gas discharge." From the language in the above quotation from their application, they attempt to define "thermionic tube" as inclusive of "cold cathode type devices." The board considered that incorrect, stating:

"Thermionic devices, as ordinarily understood in the art, refer to devices which operate at a sufficiently elevated temperature above customary room temperature to emit electrons copiously so as to produce a usable current flow. Cold cathode type discharge devices are not usually regarded as thermionic devices."

In the brief for the Commissioner, the solicitor cites pertinent definitions as follows:

\* \* \* "Webster's Third New International Dictionary of the English Language Unabridged," G. & C. Merriam Company, Springfield, Massachusetts, 1961, on page 2373 defines "thermionic tube" as "an electron tube in which electron emission is produced by the heating of an electrode." A "cold cathode" is defined on page 442 as "a cathode in an electron tube or fluorescent lamp that is unheated and that emits electrons when bombarded by ions or subjected to light, infrared or ultaviolet [sic] rays." In the "McGraw-Hill Encyclopedia of Science and Technology," McGraw-Hill Book Company, Inc., New York, New York, 1960, "thermionic emission" is said (at Volume 13, page 553) to be "The emission of electrons into vacuum by a heated electronic conductor." A "cold-cathode tube" is defined on page 274 of Volume 3 of the said encyclopedia as "An electron tube that depends upon means other than thermionic emission from a hot cathode for at least the initial source of electrons to start the tube conducting."

It seems clear to us that appellants' attempt to use the term "thermionic tube" in a sense to include cold cathode tubes is contrary to the usual accepted meaning of the term "thermionic." However, other circumstances make it unnecessary for us to rule on whether that term, as used in patent claim 12, must be limited to its usual accepted meaning.

On this point, the board stated:

"Even accepting the strained definition of thermionic devices as set forth in the application, we note that each of the devices disclosed, contemplates the use of gas at low pressure. The gas is ionized to give off light as in a neon tube, or is used to produce ultra-violet radiations which bombard fluorescent coatings on the inside of the tubes causing it to fluoresce and give off light as in the fluorescent lighting tubes now so commonly used.

"While electroluminescent devices use phosphors, they operate in an entirely different way than the devices set forth by appellants. They do not use heated cathodes, nor low pressure gas discharges, but are formed as a layer of powder or enamel and are excited by strong changing electrical fields. They are recognized in the art as an entirely different sort of device as is indicated by the three patents from which claims have been copied, by the literature referred to in the two Loebner patents, and in other places, such as the article entitled, 'Electroluminescence and Related Topics' beginning on page 1911, Proceedings of the I.R.E., December, 1955 'Electroluminescence—A New Method of Producing Light' beginning on page 688, Illuminating Engineering, November, 1950, and patent No. 2,684,450, July 20, 1954."

We agree with the board's conclusion. There can be no justification whatever for accepting an interpretation of patent claim 12 which is broader than the obviously strained definition which appellants' specification attempts to give it. As noted by the board, the two types of light sources disclosed in the specification both employ gases; in one case the gas is ionized and glows, and in the other the gas generates ultraviolet radiations which bombard fluorescent coatings on the interior of the tubes.

We think the record clearly shows that there are light sources answering the limitations of the rejected claims which do not fit within even the strained definition which appellants' specification attempts to assign to "thermionic devices." The Reis patent and the Loebner patents utilize luminescent cells as the light source. In Reis, those cells are formed as deposits

on opposite sides of a transparent plate. Loebner No. 2,907,001 states:

"* * * The phenomenon known as electroluminescense is one occurring in certain phosphor materials that may be caused to emit visible, or near visible, radiations by subjecting them to electrical fields, for example, to alternating electrical fields of certain magnitude and frequency."

The same patent states that electroluminescent material may be composed of "compounds in the sulphide phosphor family, for example, zinc sulfo-selenide activated with copper and a halide coactivator, or any other material known to electroluminesce with sufficient efficiency." Loebner No. 2,895,054 uses electroluminescent elements in a similar manner to No. 2,907,001, stating that the elements "may be of a material such as zinc sulphide phosphor."

Appellants state in their brief:

Referring to Webster's New International Dictionary, Second Edition, Unabridged, the word "luminescence" is defined as follows:

"Physics. Any emission of light not ascribable directly to incandescence, and therefore occurring at low temperatures. It may be produced by physiological processes, as in the firefly; by chemical action * * *; by friction * * *; *by electric action (electroluminescence such as the glow of gases in vacuum tubes* when subjected to electric oscillations of high frequency * * *)." [Emphasis appellants'.]

They point out that their application discloses ionizing gas to give off light as in a neon tube and urge that they thus disclose "one form of electroluminescence." Even accepting their defini-

tion, which the record indicates is broader than the definition accepted in the specific art, it is apparent that there is no justification for straining the meaning of "thermionic devices" in appellants' patent claims to include any devices normally regarded as not thermionic beyond those appellants specifically disclosed in their specification. Thus, claim 12 cannot be interpreted as including electroluminescent devices of the type used in Reis and the Loebner patents, for such are neither included in the proper definition of "thermionic" nor specified in appellants' specification. The appealed claims, however, obviously do include such luminescent devices. Thus, the appealed claims are definitely broader than appellants' patent claim 12 and are barred to appellants by 35 U.S.C. 251.

Appellants appear to argue additionally that they should have been allowed to contest the appealed claims in interference with the patentees from which they were derived even though they themselves are barred from obtaining those claims. Their position seems to be that the Patent Office should have declared the interferences merely to enable them to prove the claims are invalid in those patents. That matter is not before us, since our function here is limited to review of the decision of the Board of Appeals on the question of the patentability of the claims to appellants. We will not here pass judgment on the policy of the Patent Office, evidenced in Rule 201(b),[3] of requiring that a claim be otherwise patentable to an applicant before instituting interference proceedings.

The decision of the Board of Patent Appeals is affirmed.

Affirmed.

3. Rule 201(b) reads:
   "An interference will be declared between pending applications for patent or for reissue of different parties when such applications contain claims for substantially the same invention which are allowable in the application of each party, and interferences will also be declared between pending applications for patent, or for reissue, and unexpired original or reissue patents, of different parties, when such applications and patents contain claims for substantially the same invention which are allowable in all of the applications involved, in accordance with the provisions [of these rules]."