51 CCPA

**Application of Arthur L. MALOY, Charles R. Maloney and James O. Hambrick.**

**Patent Appeal No. 7137.**

United States Court of Customs and Patent Appeals.

March 12, 1964.

of Styrene from Phenyl Methyl Carbinol."

The invention relates to a method of producing styrene. The prior art taught the dehydration of phenyl methyl carbinol with the aid of a catalyst to form styrene. The claimed invention here appealed is "the discovery that phenyl methyl carbinol can be dehydrated to styrene with sulfuric acid as the catalyst in the vapor phase."

Claim 1 is illustrative and reads as follows:

> "Process for producing styrene which comprises heating phenyl methyl carbinol in the vapor phase and in the presence of sulfuric acid at a temperature sufficiently elevated to cause dehydration of said phenyl methyl carbinol."

Three rejections were sustained by the Board of Appeals: (1) unpatentable over prior art; (2) undue breadth and functionality; and (3) undue multiplicity.

As to (1), the board relied on the following references:

| | | |
|---|---|---|
| Seymour et al. | 2,634,302 | April 7, 1953 |
| Hunter et al. (British) | 589,015 | June 9, 1947 |
| Monsanto (British) | 633,646 | Dec. 19, 1949 |

Appellants state, and the solicitor agrees, that the Seymour et al. patent is the United States counterpart of the Monsanto British patent, and the two are substantially identical. Therefore, only Seymour et al. will be discussed here.

The Seymour et al. patent discloses the dehydration of dimethyl-biphenyl-carbinol to isopropenyl biphenyl in the vapor phase in the presence of one of a number of catalysts at temperatures "above 225° C. and preferably in the neighborhood of 250° C. to 320° C." Included in the catalysts disclosed are sodium and potassium bisulfate.

The Hunter et al. patent discloses the vapor phase dehydration of phenyl methyl carbinol and substituted phenyl methyl carbinols in the presence of one of a variety of catalysts. Included in the catalysts disclosed is phosphoric acid,

J. Hart Evans, New York City, Paul A. Rose, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel) for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This appeal is from the decision of the Board of Appeals refusing claims in patent application Serial No. 622,837, filed November 19, 1956, for "Production

but not sulfuric acid. Hunter et al. notes that the dehydration process had been carried out in the liquid phase with sulfuric acid in the prior art. Substituted phenyl methyl carbinols are contemplated as shown by the following:

"According to the invention therefore phenyl methyl carbinol or a substitution derivative thereof is heated in the vapour phase under a pressure below 300 mm. of mercury in contact with a dehydration catalyst. The term "substitution derivative" is employed to denote both alkyl substitution derivatives (i. e., homologues) and derivatives containing other substituting groups or atoms, for example aryl groups and/or halogen atoms, either in the nucleus or in the side chain or in both."

The examiner rejected the claims "as unpatentable over Fenoglio et al, Hunter et al, McKeever et al, Kern, Seymour et al and the Monsanto (British) patent." The examiner considered the dimethyl biphenyl carbinol of Seymour et al. to be "a similar alcohol" to phenyl methyl carbinol. He said:

" * * * It is not deemed inventive to employ any specific compound capable of yielding sulfuric acid in the process of the references in the absence of a showing of any new and unexpected results. Furthermore, it is not inventive to conduct a reaction in the vapor phase which formerly had been carried out in the liquid phase."

On appeal, the board disagreed with the rejection "based upon McKeever et al., Kern, Fenoglio et al. or Hunter et al. alone." It drew a distinction between vapor phase dehydration and liquid phase dehydration. However, Hunter et al. was found to provide an "art recognition of the relationship between the starting carbinol of Seymour et al. or Monsanto and of appellants." That is, dimethyl biphenyl carbinol, as in Seymour et al., was considered a "substituted phenyl methyl carbinol." With this relationship in mind, the board found it obvious "to apply the vapor phase dehydration employing potassium or sodium bisulphate as the catalyst to appellants' starting material."

The board found the catalysts of Seymour et al. to correspond to the terms of the claims relating to catalysts, stating:

"Since it is clear that under the conditions of dehydration at temperatures up to 320° C taught in these references, the potassium or sodium bisulphate will, in accordance with the reaction mechanism pointed out in pages 4 and 5 of appellants' specification, produce vaporous sulfuric acid and sulphur trioxide as well as mixtures of sodium or potassium sulphate and sodium or potassium bisulphate and of such sulphates in admixture with sulfuric acid, the dehydrating catalyst of Seymour et al. and Monsanto corresponds with that employed by appellants."

Two questions are posed by appellants with respect to the rejection on prior art. They are:

"The first question presented in this case is whether or not the Board, in affirming the Examiner, made a new rejection under rule 196(b) of the Patent Office Rules of Practice so as to afford appellants the opportunity to amend their claims in view of the new rejection. The second question is whether the Hunter et al reference really teaches the equivalency of phenyl methyl carbinol with substituted phenyl methyl carbinols."

It is appellants' contention that further prosecution of the case should have been permitted by remanding to the examiner in order that an amendment could be considered in which

" * * * the number of claims was reduced, the type of compound capable of yielding sulfuric acid was much more narrowly defined and, most important, the claims were limited by the recitation of the absence of a solid catalyst."

Appellants argue that the examiner never found that Seymour et al. discloses compounds which yield sulfuric acid as a vapor phase dehydration catalyst; that this finding by the board constitutes a new rejection; that the examiner rejected the claims under section 103 of the statute, whereas the board relied on section 102; that the rejection is based on hindsight; and that refusal of the opportunity for appellants to amend the application after the decision of the board "would deprive them of a fair and full hearing."

■ We find no support for the contention that the examiner and the board relied on different sections of the statute in rejecting the claims. Appellants state:

"Neither the Examiner nor the Board ever identified the statutes under which rejection was made. It is apparent, however, that the Examiner's action is taken under 35 U.S.C. 103 and is a rejection for obviousness in view of the prior art. * * *

"The rejection by the Board, however, appears to be under 35 U.S.C. 102 inasmuch as the Board contradicts the Examiner and holds that the use of sulfuric acid produced *in situ* is shown in the Seymour et al./Monsanto reference."

We are unable to agree that the Board relied on 35 U.S.C. § 102 in rejecting the claims, since it relied on the indication in Hunter et al. of "the expected equivalence of substituted phenyl methyl carbinols and the claimed unsubstituted phenyl methyl carbinol in reactions involving dehydration of the carbinol group" with the process disclosed in Seymour et al. and its British counterpart, Monsanto. The board stated it would "be obvious to the chemist of ordinary skill" to carry out the claimed process. The use of the language of 35 U.S.C. § 103 by the board rebuts appellants' argument that it relied on 35 U.S.C. § 102. Moreover, on reconsideration the board stated "we combined references" which sounds

very unlike a rejection predicated on section 102 of the statute.

■ The statement by the board that the potassium and sodium bisulfate catalysts of Seymour et al. produce vaporous sulfuric acid at the temperatures employed in the patent remains unchallenged. The solicitor states that it "is a known scientific fact." Since Seymour et al. do in fact show the claimed vapor phase catalyst to be old in dehydrating substituted derivatives of phenyl methyl carbinol, we agree with the board that it would be obvious to dehydrate other unsubstituted phenyl methyl carbinols in the vapor phase to produce unsubstituted styrenes. The Hunter et al. reference discloses that substituted and unsubstituted phenyl methyl carbinols may each be dehydrated using a somewhat different catalyst. To employ either the substituted derivative or the unsubstituted carbinol in the Seymour et al. process, would be obvious to one of ordinary skill in the art in view of the suggestion in Hunter et al.

The fact that the examiner did not point out that Seymour et al. disclose "a sulfur compound in the vapor phase capable of yielding sulfuric acid" does not convince us that the claimed process is not obvious. We agree with the board that this is not a new rejection. Clearly, appellants had adequate notice of the Seymour et al. patent since the record shows it was cited at least as early as August 1, 1958. It appears to us that appellants are "attempting to make a mountain out of a mole-hill by arguing at great length * * * to the effect that we should do something about the failure of the board to remand the case back to the examiner." In re Cowles, 156 F.2d 551, 33 CCPA 1236; In re Bush, 296 F.2d 491, 49 CCPA 752.

■ The Rules of Practice of the Patent Office have provided what we consider to be a "fair and full hearing" to appellants. We do not pass judgment on the administrative policies embodied in the Rules of Practice. In re Chromy et al., 318 F.2d 937, 50 CCPA 1330. Mat-

ters of practice should be decided by petition to the Commissioner. See In re Jewett et al., 247 F.2d 953, 45 CCPA 714.

Having found no error in the holding of the board that the claimed invention is obvious in view of the prior art, it is unnecessary to consider the other grounds of rejection advanced below.

For the foregoing reasons, the decision of the board is affirmed.

Affirmed.