The TORO COMPANY, Appellant,

v.

HARDIGG INDUSTRIES, INC., Appellee.

Patent Appeal No. 76–588.

United States Court of Customs
and Patent Appeals.

March 3, 1977.

14. Items 9 and 13–17 of the listing filed with the court on March 19, 1976.

Earl D. Reiland, St. Paul, Minn., Phillip H. Smith, Minneapolis, Minn. (Merchant, Gould, Smith, Edell, Welter & Schmidt, Minneapolis, Minn.), attys. of record, for appellant.

Edward M. Prince, William T. Bullinger, Washington, D. C. (Cushman, Darby & Cushman, Washington, D. C.), attys. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

MARKEY, Chief Judge.

This is an appeal from a decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (board),[1] in which the board (1) granted the motion of appellee-applicant (Hardigg) for partial summary judgment, (2) denied the motion of appellant-opposer (Toro) for summary judgment, and (3) granted Toro's motion for suspension of proceedings. The board considered res judicata inapplicable. We reverse and remand.

### Background

Hardigg filed application serial No. 341,-386 (application I) on October 22, 1969, seeking registration of TORO–PAD for "Plastic Pads for Absorbing and Otherwise Dissipating Shocks." Toro opposed and adduced testimony. Hardigg took no testimony.[2] The opposition was sustained, the board having found a likelihood of confusion in the simultaneous use of the marks on Hardigg's goods as described and on Toro's replacement shock absorbers. On June 19, 1972, Hardigg appealed to this court. We affirmed on January 17, 1974.[3]

On July 21, 1972, without notice to Toro, or to this court in which its appeal was pending, Hardigg filed the present application, serial No. 430,451 (application II), seeking registration of TORO–PAD for "Plastic Cushioning Pads for Bumpers and Packaging Applications," alleging the same dates of use and submitting the same specimens (photos of pads bearing the mark) as in application I.

Application II was published for opposition on July 23, 1974. Toro opposed on September 13, 1974. Paragraph 8 of Toro's notice of opposition claimed res judicata as a basis for sustaining the opposition. On April 11, 1975, Toro sued Hardigg for trademark infringement and unfair competition in the federal district court in Minnesota. In the PTO, Toro filed a motion to suspend the present proceedings. Hardigg opposed the motion to suspend and filed a motion to strike paragraph 8 of the notice on the ground that res judicata was inapplicable.

---

1. 187 USPQ 689 (1975).

2. Hardigg relied in this prior opposition on *argument* that its pads were sold only to "packaging engineers and experts." The board correctly dismissed the argument for lack of support in the record.

3. 180 USPQ 403 (1974).

Toro filed, and Hardigg opposed, a motion for summary judgment based on res judicata.

### The Board

The board characterized the board decision in the previous opposition as follows:

> An examination of the Board's decision in the previous opposition reveals that although applicant's goods there involved were identified as plastic pads for absorbing and otherwise dissipating shocks, nevertheless when faced with evidence of opposer's prior use of the mark "TORO" for, inter alia, replacement parts for lawn mowers, including shock absorbing devices, applicant sought to avoid a finding of likelihood of confusion by arguing that it, unlike opposer, sold its shock absorbing devices not to the home owner but to "packaging engineers and experts." The Board, in rejecting applicant's argument, pointed out not only that applicant had taken no testimony to establish the nature and use of its product or the class of purchasers for whom it was intended but also that applicant's application contained no restrictions in these respects except to the extent that its product was described therein as being made of plastic. * * *

It then stated the res judicata issue in these terms:

> As a result of that decision, applicant filed its present application to register the mark "TORO–PAD", wherein its product, which is apparently the same product as that involved in applicant's prior application, is identified more narrowly as "plastic cushioning pads for bumpers and packaging applications."

> Thus the basic question raised by the pending motions for summary judgment is whether the issue of likelihood of confusion presented in this proceeding, wherein applicant's goods are described as "plastic cushioning pads for bumpers and packaging applications" was or could have been litigated in the prior opposition, wherein applicant's goods were described more broadly as "plastic pads for absorbing and otherwise dissipating shocks."

The board then stated that Hardigg could not have obtained consideration of its argument that its goods were not actually similar to Toro's, even if Hardigg had submitted evidence thereof because " * * * it is well established that the question of likelihood of confusion in a proceeding of this nature must be determined solely upon a consideration of the goods identified in applicant's application, regardless of the uses or specific nature thereof revealed by the evidence of record." The board considered the rationale of that statement in numerous cited authorities to be the applicability of the presumptions of Section 7(b) of the Act of 1946 to all goods listed in the application. The board then said:

> * * * In the same vein, the Board has on a number of occasions held that the identification of goods in an application involved in an opposition proceeding may not be amended in the absence of opposer's consent thereto since opposer is entitled as a matter of right to a determination of the issues set forth in the pleadings, including the identification of goods in applicant's application as published in the Official Gazette for opposition purposes. See, for example: *Cool-Ray, Inc. v. Eye Care, Inc.*, 183 USPQ 618 (TT&A Bd., 1974), and *Economics Laboratory, Inc. v. Estee Lauder Inc.*, 183 USPQ 443 (TT&A Bd., 1974).

The board held res judicata inapplicable on the view that "under the existing decisional law" Hardigg was bound in the first opposition by its description of goods and "thus could not obtain a determination of the issue of likelihood of confusion based on the asserted actual nature of its goods," and that the present question of likelihood of confusion is thus one "which neither was nor could have been litigated in the prior opposition."

Accordingly, the board granted Hardigg's motion, in effect striking paragraph 8 (res judicata) from the notice, and denied Toro's motion for summary judgment. Opposer's

motion to suspend was granted in view of Trademark Rule 2.117, 37 CFR 2.117.[4]

## Issue

The dispositive issue is whether the board erred in holding res judicata inapplicable.

## OPINION

### Jurisdiction

■ Confessing inability to find authorities in point, Hardigg nonetheless expresses "doubt" concerning the jurisdiction of this court to entertain the present appeal. We hold jurisdiction present. In *Knickerbocker Toy Co., Inc. v. Faultless Starch Co.,* 467 F.2d 501, 59 CCPA 1300 (1972), citing *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), we looked to whether the goal of judicial economy would be truly served by allowance of the appeal and whether the cause left unadjudicated was sufficiently distinct from the claim stricken. Those questions being answered in the affirmative, we affirmed the action of the board in striking claims to copyright infringement and unfair competition from a petitioner/opposer's cancellation and opposition pleadings and reversed its action in striking other claims.

As we recognized in *Knickerbocker* and more recently in *SCOA Industries, Inc. v. Kennedy & Cohen, Inc.,* 530 F.2d 953, 189 USPQ 15 (Cust. & Pat.App.1976), the general proposition is that this court does not have jurisdiction over appeals from interlocutory orders of the board, or over a board decision striking some but not all of a party's pleadings, or, as sometimes expressed, over decisions not "final." *United States Treasury v. Synthetic Plastics Co.,* 341 F.2d 157, 52 CCPA 967 (1965); *Seamless Rubber Co. v. Ethicon, Inc.,* 268 F.2d 231, 46 CCPA 950 (1959); and *Master, Warden, etc. v. Sheffield Steel Corp.,* 215 F.2d 285, 42 CCPA 726 (1954). In the present case, however, an early decision on res judicata would advance the goal of judicial economy,

and the res judicata claim is, in our view, sufficiently distinct from the issue of likelihood of confusion to warrant the present appeal.

Like the situation in *SCOA,* proceedings have been suspended in the PTO. Hence a ruling by us on the propriety of the board's summary judgment decisions would not promote justice by cutting off delay. Our ruling would, however, avoid the continuing pendency and possible conduct of an unnecessary and burdensome proceeding in the PTO. To force the same parties, even potentially, through a complete trial in a second proceeding involving the same marks and issues would be to nullify the judicial economy residing in our decision on the earlier appeal and defeat the goal of finality of litigation sought by the doctrine of res judicata. More importantly, unlike the situation in *SCOA* but like that in *Knickerbocker,* the res judicata issue is distinct and separate from the remaining issues in the notice of opposition. Indeed, in granting a motion by Toro to defer decision on the motion to suspend, pending determination of the motions for summary judgment, the board described the res judicata motions as "any outstanding motion[s] which may be dispositive of the case." A ruling on res judicata is clearly among the class of matters described in *Gillespie,* supra, as "fundamental to the further conduct of the case," 379 U.S. at 154, 85 S.Ct. at 312.

### Applicability of Res Judicata

The res judicata issue is one of law and is determinable by a mere comparison of the descriptions of goods appearing in Hardigg's two applications. The board read the second description as identifying Hardigg's product "more narrowly." We do not agree. The words which describe what the goods *are* and what they *do,* "plastic cushioning pads," are not more narrow than the corresponding words, "plastic pads for absorbing and otherwise dissipating shocks." Both phrases say the goods are "plastic

---

4. Hardigg did not appeal the grant of the motion to suspend. In view of our decision herein, and absent some consideration not here

involved, it would appear that the opposition would be sustained upon remand and the matter of suspension would become moot.

pads." The words regarding the *function* of the goods, "cushioning" and "absorbing * * * dissipating shocks," are ˉinterchangeable. Thus Hardigg merely substituted synonyms in describing the goods and their function.

The words "for bumpers and packaging applications" do not restrict the nature or function of the goods, but merely indicate two possible places where the goods might be used. The goods remain precisely the same "cushioning" or "shock absorbing" pads previously described.[5] Describing the goods in an application for trademark registration is not a semantic game and is not equatable to an effort to obtain the broadest possible claim in a patent application. The description of goods in a trademark registration neither expands nor limits a registrant's right to *use* its mark or to exert any rights it may have against a user of the same or similar mark. A description including a limitation to specific trade channels limits only the exertion of the particular rights evidenced by the registration containing such description. See *Commerce Drug Co. Inc. v. Kirkman Laboratories, Inc.,* 461 F.2d 833, 59 CCPA 1085 (1972).

Though we express no opinion on limitations which might avoid the effect of res judicata herein, we note that nothing in Hardigg's application II limits use of its mark in connection with sales of its pads for use on bumpers or for use in packaging applications. Nothing therein indicates that its goods are specifically or solely designed for such use. Most importantly, nothing in the present description of goods limits their channels of trade. Hardigg argues as though the words of its present description were "plastic cushioning pads *sold only for use in* packaging applications," but that is not the case. The board in the

prior opposition held that the description therein of Hardigg's goods "contained no restrictions" regarding sale to "packaging engineers and experts." We detect no such restrictions in the present description. If "for packaging applications" be read to mean "sold only for use in packaging applications," Hardigg's description is still not restricted to packaging applications. It includes "bumpers," which are shock absorbers and are encompassed within its earlier description.[6]

■ We do not hold, as Toro would apparently have us do, that identity of the goods is sufficient of itself to require invocation of the doctrine of res judicata. The rule is clear that registration must be determined in the light of an applicant's goods as described in the application. But the goods must be those on which the mark is actually in use and must be accurately and truthfully described. 15 U.S.C. § 1051(a)(1). *CTS Corporation v. Cronstoms Manufacturing, Inc.,* 515 F.2d 780, 185 USPQ 773 (Cust. & Pat.App.1975). Applicants may file new applications after adverse court decisions, but, as was said more than 60 years ago in *D. H. Burrell & Co. v. Simplex Electric Heating Co.,* 44 App.D.C. 452 (1916), in an effort to arrest a "mischievous practice":

> After an applicant has been defeated in an opposition proceeding, he may be permitted to amend his application, but he must eliminate therefrom every ground of controversy which was involved in the opposition proceeding, for, unless he does so, that proceeding is rendered abortive and a second controversy started over a question that the prior decision put at rest.

In the present case, Hardigg simply did not revise the description of its goods to

---

5. Hardigg's brief is replete with statements that its second application relates to "different goods." Its argument and case citations assume a difference in goods. Yet Hardigg has never submitted evidence tending to establish a difference in goods, despite numerous opportunities to do so. No affidavit was submitted in support of Hardigg's motion to strike. The board referred to Hardigg's product as "apparently the same product." The specimens in

both applications are photos of identical goods. It is clear that the only "difference" in the record is a change of words in the *description* of the goods.

6. That bumpers are shock absorbers, is not denied by Hardigg, whose arguments ignore the point and concentrate on "packaging applications," a tactic apparently successful below.

limit their nature, function, use, or channels of trade, though, if the facts so warranted, it could have easily done so. Neither the goods nor their description being effectively changed, the issue remained unchanged, and Hardigg was not entitled to retry that issue by insisting upon the conduct of Toro's present opposition to final determination.

Thus this second action between the parties was not on "a different cause or demand." *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 68 S.Ct. 715, 92 L.Ed. 898 (1947). Because "bumpers" are shock absorbers, and likelihood of confusion when the mark is applied to any of the goods described is sufficient, the board could have disposed of the case on the doctrine of collateral estoppel, the cause being unchanged and the "packaging" language being superfluous and irrelevant. The board did not, however, apply the doctrine of collateral estoppel to the dispositive issue, as it did to the priority and similarity-of-marks issues unquestionably tried in the prior action. Hence we treat of the reasoning below as it appears in the opinion supporting the appealed decision.

■ If it be thought that Hardigg's present description does more narrowly describe its goods, the outcome is the same in this particular case. As the board recognized, the doctrine of res judicata means that parties to a suit and their privies are bound by the judgment of the court, not only with respect to every matter litigated but also with respect to every admissible matter which might have been offered to sustain or defeat a claim. *Commissioner v. Sunnen,* supra, at 597, 68 S.Ct. 715. The board thus considered that the dispositive question is whether the issue of likelihood of confusion between TORO on shock ab-

sorbers and TORO PAD on "plastic cushioning pads for bumpers and packaging applications" might have been litigated in the prior opposition.

■ As above indicated, the effective identity in breadth of the descriptions of goods would indicate that the issue was in fact litigated in the prior opposition. The description of Hardigg's goods there involved was broad enough to encompass plastic pads *capable* of use in an infinite variety of shock absorbing applications. Because the present description merely says Hardigg's goods are *capable* of use in two such applications and does not limit them to such use, the finding of likelihood of confusion in the prior opposition and affirmed by this court determined a "matter litigated" between the parties, making the first part of the doctrine of res judicata applicable.

However that may be, the doctrine is equally applicable in this case if attention be focused, as was the board's, upon the second part of the doctrine, i. e., "matter which might have been offered." It is clear that Hardigg could have litigated in the prior opposition the defense, if it had one, that its pads move in different channels of trade from those in which the shock absorbers of Toro move.[7] It elected to submit no exhibits and to adduce no testimony in support of that defense.[8]

The board erred in its view that Hardigg could not have obtained consideration of its present contention in the prior opposition, even if it had submitted evidence in support thereof. That view was based on an erroneous linkup of two established rules: (1) that likelihood of confusion must be determined solely upon consideration of the goods identified in the application, and (2) that an applicant may not amend the description of goods without opposer's con-

---

7. Though Hardigg does not so argue, its case for non-likelihood of confusion necessarily rests, on this record, upon a difference in channels of trade. Conveniently ignoring "bumpers," Hardigg would have us infer, from its mere addition of the phrase "and packaging applications," that its goods are sold only to packaging engineers. See n. 2.

8. The notion that an applicant may retain an *unnecessarily* broad description of goods while he employs the judicial process, at the expense of the taxpayers, to "try" the sole issue of dissimilarity of the marks alone, when an accurately amended description would have enabled trial of the whole case, is anathema to the doctrine of res judicata and to the goal of judicial economy it was designed to achieve.

sent. The critical fact in this regard is Hardigg's failure to submit its evidence and thereafter to seek appropriate amendment of its application in the prior opposition. It was error for the board to assume that opposer would have withheld consent to such amendment, and to conclude, on the sole basis of that assumption, that Hardigg was "bound by its broad identification of goods and thus could not obtain a determination of the issue of likelihood of confusion based on the asserted actual nature of its goods."

■ It was Hardigg, not Toro, which precluded the opportunity for consideration of the true nature of Hardigg's goods in the prior opposition. It will not do for a litigant to refrain, by choice, from even attempting to litigate a matter brought to its attention and clearly litigable without injury to itself in a first inter-partes proceeding and then, in a subsequent inter-partes proceeding against the same party, be relieved of the effect of res judicata on the ground that the matter could not have been litigated.[9]

The board stated, "To apply the doctrine of res judicata inflexibly in situations such as this would create an injustice in cases where an applicant's goods may in fact so differ from those in connection with which opposer uses its pleaded mark that there is no likelihood of confusion." We think, on the contrary, that situations such as this, wherein all the evidence is that Hardigg's goods do not in fact differ, and the only "difference" lies in the words of substantially equally unrestricted descriptions of goods, are precisely the type of situations requiring application of res judicata. To require an opposer, who had been successful in a prior opposition and appeal to this court, to undergo a second opposition proceeding and potential appeal solely because of insignificant word changes in the description of goods would defeat the goal of judicial economy and would work an injustice upon that opposer.

Accordingly, the decision of the board in which it granted Hardigg's motion for partial summary judgment and denied Toro's motion for summary judgment is *reversed* and the case is *remanded* for further proceedings consistent with this opinion.

REVERSED and REMANDED.

MILLER, Judge, concurring.

I agree with the result reached by the majority, but the decision should be based on collateral estoppel[1] rather than on res judicata. As I see it, this appeal involves a different cause than did the first appeal, because the description of goods in Hardigg's application II is not the same as the description of goods in application I. The majority sees it differently.

In Hardigg's application I, the goods were described as "plastic pads for absorbing and otherwise dissipating shock." In its application II, the description is narrower— "plastic cushioning pads for bumpers and packaging applications." Use of the goods for "bumpers" is included within the generic use of the goods "for absorbing and otherwise dissipating shocks." The majority says that nothing in application II limits

---

**9.** A situation distinguishable from the statutorily permissible refiling of *ex parte* applications for patent or trademark registration, after affirmance on appeal of a rejection in a first application. Even then, the applicant's pocketbook and the imperative of judicial economy require maximum effort toward full consideration of as many apparent and alternative positions as possible in connection with the first application, and an applicant attempting to retread the *same* ground in a refiled application should anticipate the same result. The present situation is also distinguishable from that in which a properly broad description of goods overlaps with the goods of a prior user, and the

applicant, having lost an appeal filed in the bona fide belief that the overlap would not be likely to lead to confusion, files an application containing a description of goods which unequivocally eliminates the overlap. In such event, the overlap issue was litigated and the amended description raised a new issue not litigable in the first proceeding, there being no provision for alternative descriptions in trademark applications.

**1.** I use the term in light of this court's discussion in *Midland Cooperatives, Inc. v. Midland Int'l Corp.*, 421 F.2d 754, 760, 57 CCPA 932, 939 (1970).

use of Hardigg's mark" in connection with sales of its pads for use on bumpers or for use in packaging applications." By the same token, it could be said that nothing in application I limited Hardigg's mark in connection with sales of its pads for use, in absorbing and otherwise dissipating shocks. That doesn't render the descriptions the same. Where the majority errs is in failing to recognize that "plastic cushioning pads" in application II is narrower than "plastic pads" in application I [2] and in ignoring the difference in stated uses of the goods between applications I and II.[3] It is true, as the majority says, that "bumpers" (application II) are shock absorbers and are encompassed by "plastic pads for absorbing and otherwise dissipating shocks" (application I); but other goods so "encompassed," such as shoulder padding material in hunting coats, would not be covered by the narrower description in application II.

Appellants submitted a dictionary definition of "bumper" as "a device or attachment (as on a vehicle) for absorbing shock . . . ." Appellee has not disputed that a bumper is a shock absorbing device. Although the board did not make a finding on the point, this court can consider arguments presented both before the board and on appeal. See *Snitzer v. Etzel,* 465 F.2d 899, 903, 59 CCPA 1242, 1246 (1972); *Myers v. Feigelman,* 455 F.2d 596, 604, 59 CCPA 834, 844 (1972).

The first board opinion [4] found that "opposer and applicant are both engaged in the sale under their respective marks of shock absorbing devices" and held that "contemporaneous use of these marks for the specified goods would be likely to cause confusion or mistake or to deceive." We af-

firmed.[5] Thus, the issue of likelihood of confusion has been litigated between the parties and determined, in part, on the basis of a description of goods that included the description of goods before us on this appeal. The new description does not remove the "overlap" problem (see majority opinion note 9), because "bumpers" include appellant's replacement "shock absorbing devices." Therefore, collateral estoppel applies to preclude relitigation by appellee on this issue.

Although in this appeal the board based its decision regarding description of goods on the inapplicability of the doctrine of res judicata and applied collateral estoppel only with respect to priority of use and similarity of the marks, the decision of this court on the description-of-goods issue can be properly based on collateral estoppel. See *The Seven-Up Co. v. Bubble Up Corp.,* 312 F.2d 472, 50 CCPA 1012 (1963). This court's function under 15 USC 1071 is to review decisions of the board—not merely its reasoning, and it is not limited to the specific legal theories advanced by the board. *Ilco Corp. v. Ideal Security Hardware Corp.,* 527 F.2d 1221, 188 USPQ 485 (Cust. & Pat.App. 1976).

Appellant properly raised the defense of collateral estoppel and argued it both before the board and this court. The record supports a holding that appellee is collaterally estopped from relitigating the issue of likelihood of confusion, and I would reverse the decision of the board and remand accordingly.

BALDWIN, Judge, dissenting.

I believe the board correctly denied the motion for summary judgment. This case

---

2. The majority says that "plastic cushioning pads" are not more narrow than the "corresponding" words, "plastic pads for absorbing and otherwise dissipating shocks," But this misstates the "corresponding" words in application II, which are "plastic cushioning pads for bumpers and packaging applications."

3. See *Commerce Drug Co. v. Kirkman Laboratories, Inc.,* 461 F.2d 833, 835, 59 CCPA 1085, 1089 (1972), for an example of where this court has considered recitations of intended uses of goods described in trademark applications to

be relevant in determining likelihood of confusion. The TTAB has also considered such uses in reviewing trademark applications. *Mac-Fab Mfg., Inc. v. Mac-Fab Products, Inc.,* 179 USPQ 568 (1973); *Rohm & Haas Co. v. Rohm & Hass G.m.b.H.,* 126 USPQ 197 (1960).

4. 173 USPQ 813 (1972).

5. Decision (only) published in 180 USPQ 403 (1974).

involves a material question of fact, namely, whether the clause "for bumpers and packaging applications" actually limits the class of goods described by the appellee's second application. See *In re E. I. duPont de Nemours,* 476 F.2d 1357, 1361, 177 USPQ 563, 567 (Cust. & Pat.App.1973).[1] This question of fact is clearly in dispute, as pointed out in Appellee's Opposition of May 30, 1975 (R. 165). Even if the parties agree on the abstract meaning of words, that does not settle the nature of objects described by those words. A genuine issue as to any material fact is not properly resolved by summary judgment. *Best Lock Corp. v. Schlage Lock Co.,* 413 F.2d 1195, 56 CCPA 1472 (1969). The board used another basis for their denial of summary judgment, but we are not limited to review of that basis. See *Ilco Corp. v. Ideal Security Hardware Corp.,* 527 F.2d 1221, 188 USPQ 485 (Cust. & Pat.App.1976).

I also disagree with the majority opinion's discussion of the "could have been raised" portion of res judicata. At the outset, the discussion is unnecessary. Furthermore, this portion of the doctrine has logical basis only in normal litigation wherein alternative pleading is allowed. The majority opinion could be misconstrued (assuming the result was not intended) to bar a party who has failed to obtain publication for opposition of a trademark application containing an overbroad description from prosecuting a new application containing a proper description. The bar would arise because the applicant *could have* abandoned his original, good faith description and substituted the proper one. A trademark applicant is allowed to adjudicate only one description per application and, I believe, the applicant has a right to have that description adjudicated without prejudice to narrower descriptions. I do not believe that the chilling effect of broad language is sufficiently attenuated by qualifying remarks indicating that the language is limited to the facts of the case.

---

1. *DuPont* clearly characterizes the nature of the goods described in an application as a fact.