CHESEBROUGH–POND'S INC.,
Appellant,

v.

FABERGE, INCORPORATED, Appellee.

Appeal No. 79–558.

United States Court of Customs
and Patent Appeals.

April 17, 1980.

Marie V. Driscoll, New York City, attorney of record, for appellant.

Richard Whiting, New York City, attorney of record for appellee, David M. McConoughey, New York City, of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN, and MILLER, Associate Judges, and FORD,* Judge.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Trademark Trial and Appeal Board (TTAB) which granted appellee Faberge's motion for summary judgment dismissing Chesebrough-Pond's (hereinafter "Chesebrough") counterclaim for cancellation of Faberge's registration of the mark MACHO in opposition No. 57,551. We affirm.

*Background*

Faberge opposed registration by Chesebrough of the mark MATCH for use on men's toiletries, based on its use and registration of the mark MACHO for the same goods. Chesebrough counterclaimed for cancellation of Faberge's registration, asserting several grounds for invalidity of the registration, the details of which are not relevant here.

After some discovery, Faberge moved for summary judgment dismissing the counterclaim on the basis that the allegations therein were groundless. Affidavits and exhibits were filed in support of the motion, in refutation of the contentions in the counterclaim, in an effort to establish absence of disputed material facts.

Chesebrough did not wish the motion to be decided without the benefit of additional discovery on the issues raised in its counterclaim. On November 1, 1977, the TTAB set a date for a pre-trial conference and requested the parties to file statements concerning the status of the discovery process. At the conference, future discovery arrangements were detailed, including deposition taking and document inspection. Chesebrough's time to respond to the motion for summary judgment was extended until February 28, 1978.[1]

On February 27, 1978, Chesebrough again moved for an extension of time in which to respond to the motion, asking the TTAB to set some date in the future. Faberge consented to the request, and it was granted by the TTAB.

On April 13, 1978, Chesebrough again renewed its motion for an extension of time. The parties stipulated that the time should be extended to June 20, 1978, and the TTAB granted the motion on April 27, 1978.

On June 22, 1978, Chesebrough moved to amend its counterclaim by removing certain allegations and inserting other allegations. Simultaneously it also filed a MEMORANDUM IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT.

On August 7, 1978, the TTAB granted the motion to amend the counterclaim, and set August 28, 1978, as the date for renewal of Faberge's motion for summary judgment on the amended counterclaim. October 2, 1978, was set as the date for Chesebrough's response to the renewed summary judgment motion.

Faberge filed its renewed motion on August 21, 1978. On September 27, 1978, the TTAB agreed to yet another request by Chesebrough for an extension of time, set-

---

* The Honorable Morgan Ford, Judge, United States Customs Court, sitting by designation.

1. On November 9, 1977, Faberge advised the TTAB that Chesebrough was technically in default concerning the motion for summary judgment, since it had not filed a brief in opposition. The TTAB had reminded Chesebrough of the need to respond by October 28, 1977, stat-

ing that additional time in which to respond would be granted if requested. Chesebrough filed such a request on October 27, 1977, for the purpose, inter alia, of obtaining further discovery concerning the counterclaim issues, in a paper entitled RESPONSE TO MOTION FOR SUMMARY JUDGMENT.

*ting October 30, 1978, as the due date.* The parties were directed to file a stipulated record for purposes of the motion for summary judgment. Faberge was to compile and deliver the record to Chesebrough by October 2, 1978. The record was mailed to Chesebrough on September 29, 1978.

On October 20, 1978, Chesebrough again moved for an extension of time in which to file its brief, stating the circumstance that it had just brought suit against Faberge in the Central District of California on issues said to be dispositive of the opposition. Filed concurrently was a motion to suspend the TTAB proceedings pending the outcome of the civil action.

Faberge wrote to the TTAB on October 26, 1978, submitting the record which it had prepared in accordance with the TTAB request, and attached copies of its unanswered communications sent to Chesebrough seeking compliance with the stipulation request.

### The Decision Below

October 30, 1978, passed without the submission of Chesebrough's brief in opposition to Faberge's motion for summary judgment on the counterclaim. It does not appear from the record that Chesebrough ever contacted the TTAB to inquire of the status of its latest request for an extension of time.

One month later, on November 30, 1978, the TTAB issued its decision denying the last request for an extension of time. The TTAB also granted Faberge's motion for summary judgment as conceded under the provisions of 37 CFR 2.127(a), which reads in pertinent part:

> Briefs in opposition to a motion shall be filed within 15 days from the date of service of the motion unless another time is specified by the Trademark Trial and Appeal Board or the time is extended on request. *Where a party fails to file a brief in opposition to a motion, the Trademark Trial and Appeal Board may treat the motion as conceded.* [Emphasis ours.]

The TTAB opinion first detailed the chronology of events which we have set out above, acknowledging the numerous instances in which requests for extensions of time had been granted to Chesebrough. Then, with respect to the application of 37 CFR 2.127(a), the TTAB stated:

> In view of the repeated extensions granted applicant for responding to the motion, we believe that this is a proper case to invoke the provisions of that rule. Accordingly, we are constrained to proceed on opposer's motion by way of default.

### Positions of the Parties

Faberge argues that this court does not have jurisdiction to hear this appeal. Its position is that the denial by the TTAB of a request for an extension of time in which to file a brief, as well as the granting of a motion under the provisions of 37 CFR 2.127(a), is not a "decision" of the TTAB within the meaning of § 21 of the Lanham Act (15 U.S.C. § 1071), the statutory grant of jurisdiction to this court to entertain appeals from the TTAB. Section 21(a)(1) provides, in pertinent part:

> * * * [a] party to an opposition proceeding * * * [or a] party to a cancellation proceeding, * * * who is dissatisfied with the decision of the [TTAB], may appeal to the United States Court of Customs and Patent Appeals * * *.

Faberge contends that the proper avenue of relief for Chesebrough from the action of the TTAB is by petition to the Commissioner under 37 CFR 2.146 if a request to the TTAB for reconsideration of its decision under 37 CFR 2.127(b) is denied.

For this proposition, Faberge relies on decisions of this court in both patent and trademark cases which set forth the "appealable versus petitionable dichotomy." In these cases, this court has drawn a general distinction between substantive and procedural determinations.[2] Chesebrough

---

**2.** These cases include *In re Searles*, 57 CCPA 912, 422 F.2d 431, 164 USPQ 623 (1970); *In re*

*James*, 57 CCPA 1371, 432 F.2d 473, 167 USPQ 403 (1970), both of which were ex parte patent

notes that the TTAB considered the motion for summary judgment to be dispositive of the case, since it addressed the issue prior to granting the motion to suspend the proceedings. This is relied upon as conclusive on the issue of appealability and hence jurisdiction. Any dispositive ruling is urged as appealable under § 21 of the Lanham Act.

Chesebrough attempts to distinguish the decisions of this court relied upon by Faberge. It is urged that the ex parte patent appeals are totally nonpertinent and the trademark cases are dismissed by Chesebrough as involving facts not analogous to the instant situation.

Chesebrough relies on this court's decision in *Knickerbocker Toy Co. v. Faultless Starch Co.*, 467 F.2d 501, 175 USPQ 417 (CCPA 1972), where we gave "practical construction" to the final judgment rule, considering the interests in both the administration of justice and the separability of the issue decided from those left undecided. We are urged to hear the appeal now in the interest of judicial economy.

Chesebrough asks that we reverse the decision of the TTAB because it amounts to an abuse of discretion. It notes that summary judgment is not favored, and, likewise, that default judgments are not favored. It states that the request for an extension of time was made, in the last instance, for an overwhelmingly convincing reason—that a civil action potentially dispositive of the issues had been brought, and a motion was pending to suspend the proceedings.

## OPINION

*Jurisdiction*

■ In considering the question of this court's jurisdiction over this appeal, two distinct issues arise: the significance of the interlocutory nature of the appeal, and the significance of the fact that the decision below was based upon application of TTAB procedural rules rather than on the merits of the counterclaim. We shall deal with these issues in order.

This court reviews only final decisions of the TTAB. *Aerco International, Inc. v. Vapor Corp.*, 608 F.2d 518, 203 USPQ 882 (CCPA 1979). Certain interlocutory appeals are sufficiently final for the purpose of immediate review; if the appealed issue is sufficiently separate and distinct from the issues remaining unadjudicated, and the goal of judicial economy would be served by prompt resolution of the dispute, this court has allowed the appeal of interlocutory orders. *Toro Co. v. Hardigg Industries, Inc.*, 549 F.2d 785, 193 USPQ 149 (CCPA 1977); *see also Stabilisierungsfonds Fur Wein v. Zimmermann-Graeff KG*, 198 USPQ 154 (CCPA 1978) (issue discussed, appeal dismissed for lack of jurisdiction). Another factor which we have considered is whether the decision appealed from has finally disposed of a right asserted by one of the parties and foreclosed its further consideration. *R. G. Barry Corp. v. Mushroom Makers, Inc.*, 609 F.2d 1002, 1005, 204 USPQ 195, 198 (CCPA 1979).

We take jurisdiction in this case. The decision appealed from satisfies the above tests. The grant of summary judgment has finally decided Chesebrough's right to assert its counterclaim, thus precluding further consideration of that issue. The issues involved in the instant counterclaim are separate and distinct from the issues remaining in the opposition. This is unlike the situation in *R. G. Barry Corp.*, supra, where the TTAB *denied* a motion for summary judgment, thus leaving the possibility that the TTAB could decide in favor of the movant on the ultimate issues and render any appeal on that issue moot.

appeals, and *Dan Robbins & Associates v. Questor Corp.*, 599 F.2d 1009, 202 USPQ 100 (CCPA 1979); *Hercules, Inc. v. National Patent Development Corp.*, 524 F.2d 1227, 187 USPQ 668 (CCPA 1975); *Palisades Pageants v. Miss America Pageants*, 58 CCPA 1225, 442 F.2d 1385, 169 USPQ 790, *cert. denied*, 404 U.S. 938, 92 S.Ct. 269, 30 L.Ed.2d 251 (1971); *Martin v.* *Crown Zellerbach Corp.*, 57 CCPA 968, 422 F.2d 918, 165 USPQ 171, *cert. denied*, 400 U.S. 911, 91 S.Ct. 140, 27 L.Ed.2d 151 (1970); *United States Treasury v. Synthetic Plastics Co.*, 52 CCPA 967, 341 F.2d 157, 144 USPQ 429 (1965); *In re Maloy*, 51 CCPA 1081, 328 F.2d 933, 140 USPQ 599 (1964), all of which were trademark appeals.

We find the second reason offered by Faberge in opposing jurisdiction in this case to be without merit. While it is true that the decision below resulted from application of TTAB rules, its effect is nonetheless substantive since it finally decides Chesebrough's right to assert its counterclaim. We are mindful of the fact that the dividing line between petitionable and appealable matters can be and often is drawn between procedural and substantive decisions.[3] To do so in this situation would, however, exalt form over substance. Even though the TTAB decision was based on a procedural rule, it finally disposed of an asserted right.

*Proper Exercise of Discretion*

■ The issue to be resolved in this appeal is a simple one. Can the TTAB, under the circumstances of this case, apply its rule to the effect that an unopposed motion may be treated as conceded? We hold it can.

Litigation is run by rules designed to assure orderly conduct of the proceedings. One of those rules is the timely submission of briefs *unless an extension of time has been granted.* An attorney has no right to assume that extensions of time will always be granted automatically, which, it appears, is what the attorney for Chesebrough assumed here.[4]

We see no good reason why the brief was not submitted on time. The record is devoid of any excuse by way of extenuating circumstances proffered by counsel for Chesebrough; there appear to be none. The argument that the TTAB knew of Chesebrough's "vigorous" opposition to the motion for summary judgment is irrelevant. It can always be said that one party to an adversary proceeding vigorously opposes the position of the other.

Given the repeated delays and extensions granted to Chesebrough in this case and its accommodation by the TTAB until the last extension was refused, we think the TTAB had little choice but to do what it did; it must be allowed the mechanism which is available by rule in order to enforce the orderly conduct of its proceedings. We do not find the slightest hint of an abuse of discretion in its decision. Regarding Chesebrough's complaint that a month elapsed between the due date of the brief and the TTAB decision, we remind Chesebrough that the burden is on it, not on the TTAB, to assure that it files its papers on time.

The decision of the TTAB is *affirmed.*

*AFFIRMED.*

3. We do not intend our decision here to effect the established rule that errors of a procedural nature occurring in the TTAB or the other PTO tribunals are normally redressed by way of petition to the Commissioner. The exception which we carve out here is narrow and is dictated only by the substantial substantive effect of the TTAB's action. This is one of the rare circumstances in which a procedural ruling by the TTAB is virtually indistinguishable from a decision on the merits in that it finally disposes of the counterclaim.

We caution that our holding that we have jurisdiction to review this essentially procedural decision of the TTAB is based solely on the circumstance that the decision resulted in a grant of summary judgment dismissing the counterclaim in its entirety. We will not normally entertain appeals questioning the propriety of other procedural rulings by PTO tribunals.

4. Present counsel for appellant was not involved in the proceedings below.