ILCO CORPORATION, Appellant,

v.

IDEAL SECURITY HARDWARE CORPORATION, Appellee.

Patent Appeal No. 75–567.

United States Court of Customs and Patent Appeals.

Jan. 29, 1976.

Ira Milton Jones, Milwaukee, Wis., atty. of record, for appellant.

John D. Gould, Merchant, Gould, Smith, Edell, Welter & Schmidt, P. A., Minneapolis, Minn., attys. of record, for appellee.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Judges.

RICH, Judge.

This appeal is from the decision of the Patent and Trademark Office Trademark Trial and Appeal Board, 184 USPQ 765 (1974), dismissing appellant's petition to cancel registration No. 927,131 of the mark HOME PROTECTION CENTER for "merchandise racks for displaying and merchandising of various types of locks and latches." The marks and goods of the parties are identical, and it is agreed that the sole issue is priority of use. We reverse.

### Facts

The goods are display racks, sold to the hardware trade by appellant and appellee for use in retail hardware stores. These racks hold an assortment of various related hardware items manufactured and distributed by the parties. The mark HOME PROTECTION CENTER is applied as a prominent label or sign across the top of the rack. It does not appear on any of the individually packaged hardware items, which bear the marks ILCO (for appellant) and IDEAL or IDEAL SECURITY (for appellee). The racks are not sold through retail trade channels, but customers are expected to see them in stores and to be attracted to the hardware items they display.

The date of first use alleged in the registration is "on or before Dec. 22, 1969." It appears that both parties had initially labelled their racks HOME PROTECTION HARDWARE, but had changed this designation to HOME PROTECTION CENTER soon thereafter. Since the facts, as found by the board, are essential to our decision herein, we reproduce the portions of the board opinion reciting them:

[I]n September 1966, [appellant] designed and developed a display rack or panel for displaying locks * * * [etc.]. As originally designed, the heading at the top of the rack prominently bore the notation "HOME PROTECTION HARDWARE" but, within a matter of weeks, it was decided to use the heading "HOME PROTECTION CENTER" thereon. Starting in November 1966, [appellant] began advertising its displays, including the security hardware assortment sold therewith under either the mark "HOME PROTECTION HARDWARE" or "HOME PROTECTION CENTER," * * *. Beginning in the fall of 1967, [appellant] sold racks bearing the heading "HOME PROTECTION CENTER" and sales of merchandising racks complete with an assortment of security hardware have been continuous to Woolworth's and other customers since such time.

* * * as early as September 1965, [appellee] began through a predecessor in title, Ideal Brass Works Incorporated, to use the heading "HOME PROTECTION HARDWARE" on racks for displaying locks, latches and the like and * * * such racks were sold to the trade since as early as the above date and subsequent thereto. In the latter part of 1966, or early 1967, [appellee] changed the heading on its display racks to the mark "HOME PROTECTION CENTER" and has used this mark since that time.

Based on these findings, the board concluded that appellee was the prior user of HOME PROTECTION CENTER:

[T]he record clearly shows that both of the parties have used "HOME PROTECTION HARDWARE" and "HOME PROTECTION CENTER" interchangeably, and we are therefore unable to make any real distinction between the two terms *which merged one into the other*. Further, in view of the manner of use by the parties, it seems apparent that they both regarded the feature "HOME PROTEC-

TION" as the distinguishing feature of their marks, and it is equally clear that as between the two parties, [appellee] is the first user *of its merged mark* by approximately a year. [Emphasis ours.]

## OPINION

### I.

In holding that appellee used HOME PROTECTION CENTER prior to appellant, the board considered appellee entitled, under its "merger" theory, to rely on its use of a *different* designation[1] for the goods, namely, HOME PROTECTION HARDWARE, for the purpose of proving a date of first use of HOME PROTECTION CENTER. This was error.

■ The law permits a user who changes the *form* of its mark to retain the benefit of its use of the earlier form, without abandonment, if the new and old forms create the same, continuing commercial impression. We agree with the following statement of the Trademark Trial and Appeal Board in *Humble Oil & Refining Co. v. Sekisui Chemical Co.*, 165 USPQ 597, 603–604 (TTAB 1970):

It is settled that a person may change the display of a mark at any time because whatever rights he may possess in the mark reside in the term itself rather than in any particular form or arrangement thereof. See: *Vacuum Electronics Corp. v. Electronic Engineering Company of California*, 150 USPQ 215 (TT&A Bd., 1966), and cases cited therein. The only requirement in these instances is that the mark be modified in such a fashion as to retain its trademark impact and

symbolize a single and continuing commercial impression. That is, a change which does not alter its distinctive characteristics represents a continuity of trademark rights. Thus, where the distinctive character of the mark is not changed, the mark is, in effect, the same and the rights obtained by virtue of the earlier use of the prior form inure to the later form.

See also *Salem Commodities, Inc. v. Miami Margarine Co.*, 244 F.2d 729, 44 CCPA 932 (1957). The test to be applied here is whether HOME PROTECTION HARDWARE and HOME PROTECTION CENTER create the same, continuing commercial impression. While it is true that appellant need *not* show prior trademark use to defeat appellee's right to maintain its registration, *Jim Dandy Co. v. Martha White Foods, Inc.*, 458 F.2d 1397, 59 CCPA 1016 (1972), noting particularly Judge Lane's concurring opinion, appellee's right to register here depends, under § 2(d), on its prior use of HOME PROTECTION CENTER or any variant thereof which is legally equivalent thereto.

■ In our opinion appellee is not entitled to rely on its use of HOME PROTECTION HARDWARE because it creates a different commercial impression than HOME PROTECTION CENTER, when the marks are applied to the goods.[2] That *appellee* may have used them interchangeably is not material because commercial impression is gauged by the impact on the *public*, in this case hardware store operators and their customers. HOME PROTECTION CENTER signifies a *unitary aggregation* of goods related to home protection, the one place in the hardware store to go for home protection needs. HOME PROTECTION HARDWARE, on the other

1. We use the term "designation" instead of "mark" to describe the nature of HOME PROTECTION HARDWARE, since we need not decide whether HOME PROTECTION HARDWARE was used on the racks by appellee as an indication of source or origin as required by the definition of "trademark" in § 45 of the Trademark Act (15 U.S.C. § 1127).

2. It must be remembered that the goods are the display racks, and not the hardware displayed thereon. Appellant argues that HOME PROTECTION HARDWARE is "descriptive" of the goods. It is at most descriptive of what is displayed on the goods and not of the goods themselves, which are merchandising racks.

hand, is shown by the record to refer to the hardware itself and not to its collection in one place on the display rack. Appellee's promotional literature makes statements such as:

> UD–7[Unit Display] groups together rapidly growing Home Protection and miscellaneous key locking products.

and

> The groups include eight assortments of screen and storm door hardware, home protection hardware and casement window hardware.

Two of appellee's catalog pages display the mark IDEAL SECURITY with the phrases "Home Protection" and "Home Protection Hardware" as headings to listings of hardware items; the items are not shown on racks, nor is there any mention of display racks on the pages. From this we conclude that HOME PROTECTION HARDWARE merely suggests hardware and not racks on which the hardware is displayed or a place where it is collected together. By regarding HOME PROTECTION to be *the* "distinguishing feature" of the two terms which it "merged," the board erroneously evaluated the overall commercial impression on the basis of only a portion of the two expressions. *Food Specialty Co. v. Kal Kan Foods, Inc.*, 487 F.2d 1389 (CCPA 1973). We hold appellee may rely only on its use of HOME PROTECTION CENTER in determining priority of use of that registered mark. We find the board's "merger" theory to have been erroneous.

## II.

■ Since our function on an appeal under § 21 of the Trademark Act (15 U.S.C. § 1071) is to review the *decision* of the board and not merely its *reasoning*, we must now determine, without resort to the erroneous "merger" theory, whether the board's holding that appellee was the first user of HOME PROTECTION CENTER is supported by the record. See *Hunt v. Treppschuh*, 523 F.2d 1386, 1388 (CCPA 1975).

The board found as a fact that appellant first sold racks bearing the mark "in the fall of 1967," which is over two years before the only definite date of first use asserted in appellee's registration. This finding is clearly supported by the evidence. Therefore, in order to prevail, appellee has the burden of proving use of the mark by it prior to "the fall of 1967" by clear and convincing evidence. *Elder Manufacturing Co. v. International Shoe Co.*, 194 F.2d 114, 39 CCPA 817 (1952). In the board's view, the record supported a date of first use by appellee in "the latter part of 1966, or early 1967." However, the record contains no credible evidence, much less clear and convincing evidence, showing use by appellee of HOME PROTECTION CENTER prior to December 22, 1969.

■ Appellee admits in its brief that no documentary evidence of the use of the mark prior to 1970 exists. The only testimony which pertains to use of the mark by appellee prior to 1970 is the following from a Mr. Smith, at one time appellee's national sales manager (emphasis ours):

> Q  Do you know, Mr. Smith, when you and Ideal Security may have first used the word "center" in connection with the UD–7 display?
>
> A  Again, it was a term that was used throughout Ideal Security, and *I can't specifically remember the exact date* that I first used it, or anyone within the company first used it. I can only *assume* it was back when we first introduced the unit display program.

This testimony is not adequate to show *any* particular date of use, since it is apparent that the witness did not remember and did not know when appellee's first use of the mark occurred; "assumptions" have no independent value as evidence.

Since appellant has shown that it was the prior user of HOME PROTECTION CENTER, the decision of the board is *reversed.*

*Taxation of Costs*

Appellant has moved the court to assess appellee with the costs of printing those portions of the record designated for printing by appellee, including exhibits as well as testimony, on the general grounds that appellee's designation was burdensome, unnecessary, and irrelevant to the issues on appeal. The motion is denied. All of the matter designated by appellee may reasonably be considered to pertain to the dates and manner of use by each party of HOME PROTECTION CENTER and HOME PROTECTION HARDWARE. That the court may not refer to all portions of the printed transcript in its opinion is unimportant when the matter designated is reasonably pertinent to the issues presented for its consideration.

*Reversed.*