This Opinion is a
Precedent of the TTAB

Mailed: April 14, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*NT-MDT LLC*

*v.*

*Irina Kozodaeva*

————

Cancellation No. 92071349

————

Lance C. Venable of Law Office of Lance C. Venable, PLLC,
    for NT-MDT LLC.

Kenneth M. Motolenich-Salas of MotoSalas Law, PLLC,
    for Irina Kozodaeva.

————

Before Zervas, Lynch and Larkin,
    Administrative Trademark Judges.

Opinion by Zervas, Administrative Trademark Judge:

Irina Kozodaeva ("Respondent" or "Registrant") owns Registration No. 5753336



(the "'336 registration") for the mark                    for the following

International Class 9 goods:

> Apparatus for recording, transmitting and reproducing
> sound and images; Computer operating software;
> Computers; Data processing apparatus; Microscopes and

their parts; Nautical and photographic apparatus and instruments, namely, underwater housings for cameras, underwater enclosures for cameras and underwater enclosures for photographic lenses; Optical apparatus, namely, a non-lethal security device that uses a light source to detect, warn, repel, temporarily blind, disorient, nauseate, disable, confuse, debilitate, stun, subdue, stop, or incapacitate persons or animals; Scientific apparatus and instruments for measuring relative DNA, RNA and protein and parts and fittings therefor; Transistors; Scanning probe microscopes.

The registration issued on the Principal Register on May 14, 2019 based on an application filed on July 19, 2018 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b). Pursuant to a statement of use filed on March 10, 2019, the registration claims first use and first use in commerce of the mark on January 8, 2019.[1]

NT-MDT LLC ("NT-MDT" or "Petitioner") filed an amended Petition to Cancel the '336 registration.[2] As grounds for cancellation, Petitioner alleges (i) Respondent had not used the mark in interstate commerce as of January 8, 2019, the date of first use and first use in commerce asserted by Respondent in her statement of use; (ii) Respondent did not own the mark when she filed the application; (iii) Respondent never had a bona fide intent to use the mark in the United States as of the filing date

---

[1] The mark is described in the registration as consisting of "a stylized design comprised of a blue rectangle with a circular cutout and a red triangle through it, next to the letters, 'NT-MDT', in a large stylistic blue font." The colors red and blue are claimed as a feature of the mark.

[2] 11 TTABVUE 3-5. Citations in this opinion are to the TTABVUE docket entry number and the electronic page number where the document or testimony appears. Because the Board primarily uses TTABVUE in reviewing evidence, the Board prefers that citations to non-confidential parts of the record include the TTABVUE docket entry number and the TTABVUE page number. For material or testimony that has been designated confidential and which does not appear on TTABVUE, the TTABVUE docket entry number where such material or testimony is located should be included in any citation. *See Turdin v. Trilobite, Ltd.*, 109 USPQ2d 1473, 1476 n.6 (TTAB 2014).

of her intent-to-use application; (iv) likelihood of confusion; and (v) fraud.[3] Among

other allegations, the Amended Petition alleges:

> 1. NT-MDT is a Russian limited liability company with its principal offices located in Moscow, Russia.
>
> 2. NT-MDT is one of several affiliated entities that make up the "NT-MDT Co." group of companies. Other entities include NT-MDT America (an Arizona corporation with its principal location in Tempe, Arizona), NT-MDT Development (an Arizona corporation with its principal location in Tempe, Arizona), NT-MDT Spectrum Instruments (a Russian company with its principal location in Moscow, Russia), NT-MDT China, a Chinese corporation with offices currently located in Beijing and Shanghai, China, and Nano Technology Instruments - Europe B.V. (a Dutch company with its principal location in Apeldoorn, The Netherlands).
>
> 3. NT-MDT Co. has existed for nearly 28 years and has done business in the United States since January 1999 primarily by distributing products that four companies manufactured: CJSC NT-MDT[4] (1999-2003); NTI (2003-2005); NT-MDT Service & Logistics (2005-2015); and NT-MDT (2015-present). These companies were all part of the NT-MDT Co. group at one time or another. …
>
> ***
>
> 17. NT-MDT Service & Logistics ("S&L") is an Irish corporation formed on August 9, 2004. At its inception, Andrey Bykov owned 90% of S&L, and Vladimir Kotov owned 10% of the company. The owners formed S&L to be the successor to NTI to develop, manufacture, and distribute AFM[5] products directly to distributors and

---

[3] 11 TTABVUE.

[4] The parties have referred to this company as both "CJSC NT-MDT" and "NT-MDT CJSC." We do the same in this opinion.

[5] "AFM" refers to "atomic force microscopes." Victor Bykov Declaration ¶ 8, 35 TTABVUE 476. The parties have not identified what they mean by the term "AFM products."

customers throughout the world, including the United States, under the NT-MDT Mark.[6]

\*\*\*

21. Between 2005 and 2008, S&L manufactured and shipped AFM products directly to its customers throughout the U.S., as well as to resale distributors that S&L licensed to use the NT-MDT Mark.

22. Beginning in 2008, and continuing through 2014, S&L manufactured and shipped its AFM products and licensed the NT-MDT Mark exclusively to one marketing and resale entity – NT-MDT America, Inc.

23. On January 1, 2015, S&L assigned all rights to its trademarks - including the NT-MDT Mark, and all of its rights in the U.S. – to NT-MDT LLC (Petitioner).

\*\*\*

25. S&L … continues to sell accessories to the AFM products. But in 2015, S&L ceased all manufacturing and sales of AFM products to the U.S through NT-MDT America.

\*\*\*

28. Between 2013 and December 31, 2014, S&L licensed NT-MDT the U.S. common law rights in the NT-MDT Mark.

29. As stated above, beginning January 1, 2015, NT-MDT acquired all rights in the NT-MDT Mark, which included all U.S. common law rights.

30. NT-MDT then continued to orally license the U.S. common law rights to the following entities: (1) NT-MDT America, to market and distribute AFM products under the NT-MDT Mark; (2) NT-MDT Spectrum Instruments; and (3) Scientific Technology Company ("STC"). …

---

[6] "[T]he NT-MDT Mark" is defined as the NT-MDT composite word and design mark identified on the first page of this decision.

31. Beginning in 2017, NT-MDT became the primary entity to manufacture and ship AFM products under the NT-MDT Mark to NT-MDT America, and under the common law trademark license, NT-MDT America continued being the exclusive marketer and distributor of AFM products in the U.S. under the NT-MDT Mark.[7]

Respondent filed an Answer in which she denied the salient allegations of the amended petition for cancellation and raised several affirmative defenses, including unclean hands, laches, estoppel, acquiescence and abandonment.[8]

## II.    Accelerated Case Resolution ("ACR")

On August 25, 2020, the parties filed their "Joint Stipulation of the Parties to Proceed via Accelerated Case Resolution and Establish Facts and Procedures for Use in ACR" using a modified summary judgment format.[9] *See* TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE ("TBMP") §§ 528.05(a)(2), 702.04 and 705 (2020). The Board approved the stipulation.[10] The stipulation provides that the parties may present their briefs in two parts based on their earlier filings made pursuant to Petitioner's summary judgment motion (filed on March 13, 2020 and withdrawn on August 3, 2020). Part One of Petitioner's brief addresses Petitioner's claim that the '336 registration is void ab initio because Respondent never shipped or sold any product bearing the mark as stated in her statement of use. Part Two of

---

[7] Amended Petition to Cancel, 11 TTABVUE 60-68.

[8] 4 TTABVUE 3. Respondent's brief did not discuss any affirmative defenses except abandonment. Respondent has therefore waived or forfeited her other affirmative defenses. *See Alcatraz Media Inc. v. Chesapeake Marine Tours Inc.*, 107 USPQ2d 1750, 1752 n.6 (TTAB 2013), *aff'd mem.*, 565 F. App'x 900 (Fed. Cir. 2014).

[9] Stipulation ¶ 12, 30 TTABVUE 5.

[10] 31 TTABVUE.

Petitioner's brief seeks (i) "judgment based on the uncontroverted fact that Registrant, Irina Kozodaeva, did not own the applied-for NT-MDT trademark … when she filed her statement of use on March 10, 2019. Hence, the resulting '336 Registration is void"; and (ii) "judgment because the entity (NT-MDT CJSC) from which Kozodaeva claims she received her rights in the U.S., had assigned those rights to a third party in 2005 and then abandoned those rights shortly thereafter. Since Kozodaeva did not have superior common law rights when she filed [her a]pplication, the Board must cancel the '336 Registration."[11]

We set forth certain parts of the stipulation below because, as explained later on, a dispute developed as to whether Respondent violated the aspects of the stipulation governing how the Respondent agreed to present her case:

> 2. NT-MDT will submit to the Board its opening ACR brief. The brief will include two parts. The first part will include arguments, affidavits, and exhibits pertaining only to NT-MDT's non-use in interstate commerce claim directed to Kozodaeva's statement of use and any time beyond the filing date of the statement of use. The second part will include the contents of the original summary judgment brief that NT-MDT filed on March 13, 2020, with its original supporting exhibits and affidavits that all pertain to the ownership of the disputed mark, priority of rights between the parties, and abandonment by CJSC NT-MDT. NT-MDT cannot raise any new arguments or include any additional supporting materials pertaining to any claim NT-MDT included in the opening brief NT-MDT filed on March 13, 2020, nor may the Board consider any.
>
> 3. Kozodaeva's responsive ACR brief will also include two parts. The first part will include arguments and any related supporting materials such as declarations and exhibits, responding only to the first part of NT-MDT's

---

[11] 33 TTABVUE 14.

opening ACR brief. The second part will include the contents of Kozodaeva's original responsive brief that she filed on May 5, 2020, with its original supporting exhibits and affidavits. Kozodaeva cannot raise any new arguments or include any additional supporting materials pertaining to any claim in the second part of NT-MDT's original opening brief it filed on March 13, 2020, or any defense in the second part of Kozodaeva's brief she filed on May 5, 2020, nor may the Board consider any.

4. NT-MDT's reply ACR brief will also include two parts. The first part will include arguments and any related supporting materials such as declarations and exhibits, responding only to the first part of Kozodaeva's responsive ACR brief. The second part will include the contents of NT-MDT's original reply brief that it filed on May 26, 2020, with its original supporting exhibits and affidavits. NT-MDT cannot raise any new arguments or include any additional supporting materials pertaining to any claim or defense in the second part of the Kozodaeva original responsive brief she filed on May 5, 2020, nor may the Board consider any.

\*\*\*

12. The parties consent to the Board's resolution of any disputed issues of material fact and to rendering a final decision based on the briefs and evidence presented.[12]

## I.   The Record

In addition to the amended Petition to Cancel and exhibits[13] and the answer thereto, the record consists of the file of the involved registration, *see* Trademark Rule 2.122(b)(1), 37 C.F.R. § 2.122(b)(1), and the following:

---

[12] 30 TTABVUE 3-4.

[13] Paragraph 6 of the stipulation provides "[t]he parties agree that all pleadings, discovery requests and responses, and exhibits and attachments to all such documents are admissible and will be entered into the record by attachment to the party's brief." 30 TTABVUE 4. Respondent submitted a copy of the amended Petition to Cancel and its exhibits as Exhibit 2 to Alexander Bykov's Declaration. 36 TTABVUE 125-215.

### A. Petitioner's Evidence

• Affidavit of Victor Bykov, who functions in an "authorized managerial capacity" for Petitioner, and exhibits (35 TTABVUE 473-90);

• Affidavit of Andrey Bykov, Petitioner's owner, and exhibits (35 TTABVUE 492-501);

• Affidavit of Vladimir Kotov, owner of Scientific Technology Company, and exhibits (35 TTABVUE 503-11);

• Declaration of Lance Venable, Petitioner's attorney, and exhibits (34 TTABVUE 85-88);

• Declaration of Tim Shaw, University Attorney for the University of Texas at Dallas, and exhibit (34 TTABVUE 89-93);

• Declaration of Lori Matthews, Director of Purchasing at the University of Texas at Dallas (34 TTABVUE 94-96); and

• Rebuttal Affidavit of Oleg Butyaev, CEO of NT-MDT America, Inc., and exhibits (43 TTABVUE 3-34).

### B. Respondent's Evidence

• Declaration of Dimitry Kozodaev, Respondent's husband and owner of NT-MDT B.V., and former employee of NanoTechnology Europe BV ("NTI-Europe B.V.") and NT-MDT Europe B.V., and exhibits (36 TTABVUE 47-78);

• Declaration of Rashid Magometovich Dzhaubaev, Russian bankruptcy trustee, and exhibits (36 TTABVUE 80-98);

• Declaration of Alexander Bykov, Chief Executive Officer of CJSC NTI from July 2006 to September 2015, a Director and co-owner of NT-MDT Service & Logistics, Ltd. from April 2005 to November 2016, and Director and sole owner of NT-MDT Europe B.V. from December 2006 to the present, and exhibits (36 TTABVUE 100-528);

• Declaration of Kenneth M. Motolenich-Salas, Respondent's attorney, and exhibits (37 TTABVUE 3-401);

· Declaration of Ms. Kozodaeva (dated October 5, 2020), and exhibits (38 TTABVUE 3-127);

· Declaration of Anastasia Alexsandrovna Yakovleva, Respondent's sister-in-law and purchaser of assets from the bankruptcy estate of NT-MDT CJSC, and exhibits (39 TTABVUE 3-23);

· Declaration of Peter Aleksandrovich Nechiporenko, Respondent's Russian attorney, and exhibits (39 TTABVUE 25-67); and

· Declaration of Ms. Kozodaeva (dated October 9, 2020), and exhibits (39 TTABVUE 69-127).

Neither party raised any objections to the other party's evidence.[14]

## II.    Entitlement to a Statutory Cause of Action[15]

Entitlement to a statutory cause of action must be established in every inter partes case.[16] *Australian Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d

---

[14] The stipulation also provided:

> 5. Substantive objections to evidence under the Federal Rules of Evidence, such as hearsay, relevance, and the like, may be raised in connection with the evidence submitted by a party in connection with its ACR brief, but no objections to evidence may be raised on the grounds that there was no prior disclosure of the evidence. Kozodaeva's objections to any evidence submitted by NT-MDT with NTMDT's opening ACR brief must be included with Kozodaeva's responsive ACR brief. NT-MDT's objections to any evidence submitted by Kozodaeva with Kozodaeva's responsive ACR brief must be included with NT-MDT's reply ACR brief. Any objections can pertain to evidence in either the first or second parts of the ACR briefs. (30 TTABVUE 4).

[15] Our decisions have previously analyzed the requirements of Sections 13 and 14 of the Trademark Act, 15 U.S.C. §§ 1063-64, under the rubric of "standing." We now refer to this inquiry as entitlement to bring and maintain a statutory cause of action. Despite the change in nomenclature, our prior decisions and those of the Federal Circuit interpreting Sections 13 and 14 remain equally applicable.

[16] Even though it is essential to the claims, the parties did not address Petitioner's entitlement to a statutory cause of action in their stipulation and briefs.

1370, 2020 USPQ2d 10837, at \*3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125-26, 109 USPQ2d 2061, 2067 n.4 (2014)). A party in the position of plaintiff may seek to cancel a registration for a mark when such cancellation is within the zone of interests protected by the statute, Section 14 of the Trademark Act, 15 U.S.C. § 1064, and the plaintiff has a reasonable belief in damage that is proximately caused by the registration of a mark. *Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at \*6-7 (Fed. Cir. 2020). "Proof of [entitlement to a statutory cause of action] in a Board [cancellation] is a low threshold, intended only to ensure that the plaintiff has a real interest in the matter, and is not a mere intermeddler." *Syngenta Crop Prot. Inc. v. Bio-Chek LLC*, 90 USPQ2d 1112, 1117 n.8 (TTAB 2009) (citing *Ritchie v. Simpson*, 170 F.3d 1092, 50 USPQ2d 1023, 1025-26 (Fed. Cir. 1999)). We look to the record evidence to determine whether Petitioner is entitled to a statutory cause of action as alleged in the amended Petition to Cancel.

The record reflects that Petitioner manufactures AFM products under the NT-MDT mark and ships the products to NT-MDT America for distribution in the United States. *See* Affidavits of Victor Bykov ("Beginning in 2017, NT-MDT LLC became the primary entity to manufacture and ship AFM products under the NT-MDT Mark to NT-MDT America, and under the common law trademark license, NT-MDT America continued being the exclusive marketer and distributor of AFM products under the NT-MDT Mark in the U.S.");[17] Andrey Bykov ("Beginning in 2017, NT-MDT LLC

---

[17] Victor Bykov Affidavit ¶ 37, 35 TTABVUE 485.

became the primary entity to manufacture and ship AFM products under the NT-MDT Mark to NT-MDT America, and under the common law trademark license, NT-MDT America continued being the exclusive marketer and distributor of AFM products under the NT-MDT Mark in the U.S.");[18] Victor Kotov ("At all times between 2008 and the present, NT-MDT America marketed and distributed the AFM products using the NT-MDT Mark under a license from the owners of the U.S. common law rights, which was S&L (2008-2014) and LLC (2015-present)");[19] and Oleg Butyaev ("[B]eginning in 2017, NT-MDT LLC became the primary entity to manufacture and ship AFM products under the NT-MDT Mark to NT-MDT America, and under the common law trademark license, NT-MDT America continued being the exclusive marketer and distributor of AFM products under the NT-MDT Mark in the U.S.").[20]

In view of this testimony, we find that Petitioner has established, by a preponderance of the evidence, that it (i) is a competitor of Respondent; (ii) uses a mark with the same wording and design as the mark of the '336 registration; (iii) has an interest in cancelling the registration that is squarely within the zone of interests protected by the statute; and (iv) has a reasonable belief that damage is proximately caused by continued registration of the mark. *See, e.g., Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 5 USPQ2d 1301, 1302 (Fed. Cir. 1987) (finding competitor has standing because it has an interest in the outcome beyond that of the

---

[18] Andrey Bykov Affidavit ¶ 22, 35 TTABVUE 498.

[19] Victor Kotov Affidavit ¶ 28, 35 TTABVUE 510.

[20] Oleg Butyaev Affidavit ¶ 19, 43 TTABVUE 7.

general public); *Peterson v. Awshucks SC, LLC*, 2020 USPQ2d 11526, at *6 (TTAB 2020) (entitlement to a statutory cause of action found where petitioner and respondent are competitors); *Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1201-02 (TTAB 2018) (standing found where plaintiff and defendant are competitors).

## III.  Background

In 1995, Victor Bykov and others formed CJSC NT-MDT as a Russian closed joint-stock company. CJSC NT-MDT's primary purpose was to develop, manufacture, and distribute atomic force microscope ("AFM") products.[21] In 1999, CJSC NT-MDT created and began using the Mark to identify AFM products that it manufactured, shipped and distributed in the United States. CJSC NT-MDT actively manufactured and shipped AFM products from Russia directly to distributors and U.S. customers.[22] Between 1999 and 2003, CJSC NT-MDT manufactured and shipped the AFM products directly to U.S. distributors and customers to use the NT-MDT Mark.[23] In 2015, CJSC NT-MDT filed for bankruptcy in Russia.[24] On March 7, 2019, Anastasia Yakovleva purchased various assets of CJSC NT-MDT at a bankruptcy sale.[25]

On March 24, 2019, Ms. Yakovleva assigned the assets she acquired to Techno-NT.[26] (Techno-NT is Respondent's sole proprietorship).[27]

---

[21] Victor Bykov Affidavit ¶ 5, 35 TTABVUE 477.

[22] *Id.* at ¶ 9, 35 TTABVUE 477.

[23] *Id.* at ¶ 11.

[24] Stipulation ¶ 7, 30 TTABVUE 4.

[25] *Id.* at ¶ 10, 30 TTABVUE 4.

[26] A. Yakovleva Declaration ¶¶ 2-4, 39 TTABVUE 4.

[27] I. Kozodaeva Declaration ¶ 2, 38 TTABVUE 3.

## IV.    Petitioner's Burden of Proof

> Because a trademark owner's certificate of registration is "prima facie evidence of the validity of the registration" and continued use of the registered mark, the burden of proof is placed upon those who seek cancellation. 15 U.S.C. § 1057(b) …. Accordingly, in a cancellation … the petitioner bears the burden of proof. Moreover, the petitioner's burden is to establish the case for cancellation by a preponderance of the evidence.

*Cerveceria Centroamericana S.A. v. Cerveceria India Inc.*, 892 F.2d 1021, 13 USPQ2d 1307, 1309 (Fed. Cir. 1989) (internal citations omitted); *see also On-line Careline Inc. v. Am. Online Inc.*, 229 F.3d 1080, 56 USPQ2d 1471, 1476 (Fed. Cir. 2000).

## V.    Petitioner's Nonuse in Commerce Claim

Under Section 45 of the Trademark Act, "use in commerce" for goods is defined as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. Section 45 goes on to state that a mark shall be deemed to be in use in commerce on goods when it is placed on the goods, or their containers or displays associated therewith, or on documents associated with the goods or their sale, and the goods are "sold or transported in commerce." *Id.*

A registration that issues from an application based on an intent to use the mark in commerce under Section 1(b) is void ab initio if the mark was not in use in commerce in connection with the goods identified in the application at the time the amendment to allege use was filed or prior to the expiration of the time for filing a statement of use. 15 U.S.C. §§ 1051(c), 1051(d)(1), and 1051(d)(2); 37 C.F.R. §§ 2.76, 2.88(a)(1), and 2.88(a)(2); *see also Embarcadero Techs., Inc. v. Delphix Corp.*, 117 USPQ2d 1518, 1526 (TTAB 2016); *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350,

90 USPQ2d 1301, 1305 (Fed. Cir. 2009) ("The registration of a mark that does not meet the use requirement is void ab initio.").

To properly assert a nonuse claim against a registration that issued from an application that was filed based on intent to use under Section 1(b), the party asserting the nonuse claim must plead, and ultimately prove, that the defendant did not use the mark with the goods or services listed in the registration within the time for filing the statement of use. *Embarcadero Techs., Inc. v. Delphix Corp.*, 117 USPQ2d at 1524-26. Here, Petitioner alleged only that Respondent was not using the subject mark at the time Respondent filed the statement of use for the underlying application.[28] Ordinarily, Petitioner's allegations of nonuse would fail to state a claim upon which relief can be granted because Petitioner has not alleged that Respondent did not use the subject mark with the goods listed in the registration prior to the expiration of the time for filing the statement of use.

Because Petitioner did not seek to further amend its pleading under Fed. R. Civ. P. 15(a) or (b), the nonuse claim must have been tried by express or implied consent under Fed. R. Civ. P. 15(b)(2) for us to consider the claim. *See, e.g.*, *Brooklyn Brewery Corp. v. Brooklyn Brew Shop, LLC*, 2020 USPQ2d 10914, *3 (TTAB 2020); *Hornby v. TJX Cos.*, 87 USPQ2d 1411, 1415 (TTAB 2008). The parties' stipulation providing that the Respondent's brief will include arguments, affidavits and exhibits pertaining to Petitioner's nonuse in interstate commerce claim directed to Respondent's

---

[28] Amended Petition to Cancel ¶ 80, 11 TTABVUE 80.

statement of use and any time beyond the filing date of the statement of use,[29] reflects that the issue was tried by the express consent of the parties.

The parties stipulated to the following pertaining to Petitioner's nonuse claim:

1. On July 19, 2018, Kozodaeva filed an intent-to-use application for the NT-MDT (logo and words) in Class 9 of goods.

2. By filing her application under § 1(b), Kozodaeva acknowledged that as of the filing date, she had not personally used the Mark on any goods in interstate commerce in the U.S. and therefore, did not own any rights to the mark in the U.S. as of the [sic] June 19, 2018.

3. The USPTO examined the application and subsequently issued the Notice of Allowance on February 12, 2019.

4. As of January 8, 2019, Kozodaeva had not used the mark in the U.S. by selling or shipping any item bearing the Mark to any entity in the U.S.

5. Even though Kozodaeva had not shipped or sold anything to the U.S. or used the mark in interstate commerce, on March 10, 2019, Kozodaeva filed a statement of use, swearing under penalty of perjury, that she had personally used the Mark on all the goods listed in her application as of January 8, 2019.

6. On April 11, 2019, the USPTO accepted the statement of use, and on May 14, 2019, the USPTO issued the registration of NT-MDT mark ("336 Registration").

7. In response to an email on February 14, 2019 from Kozodaeva's counsel requesting evidence of use in commerce and a date of first use in commerce, on February 15, 2019, Kozodaeva's husband provided a quote for a sale and a photo specimen of a product that he alleged Kozodaeva planned to sell to the University of Texas at Dallas. In that email, Kozodaeva's husband expressly stated that, based on the quote and photo, the date of first use in commerce in the USA was January 8, 2019.

---

[29] Stipulation ¶ 2, 30 TTABVUE 3.

> Kozodaeva's agent … subsequently confirmed the first use date.

> 8. Kozodaeva has never sold or shipped any product to the University of Texas at Dallas, and in particular, any product under the disputed mark during the statement of use period of the '336 Registration at any time between January 8, 2019 and May 14, 2019.

> 9. Kozodaeva never filed a corrected or amended statement of use during the prosecution of the application.

> 10. As of the '336 Registration date, Kozodaeva had never used the mark in interstate commerce in the U.S.[30]

These stipulated facts would appear to seal Petitioner's victory on the nonuse claim – "Kozodaeva had never used the mark in interstate commerce in the U.S."[31] Respondent, however, contends that she may rely on several trademark assignments that entitle her to NT-MDT CJSC's 1999 date of first use in commerce and she "mov[es] the Board, pursuant to TBMP § 514, to either amend or correct, or grant Registrant permission to amend or correct, the date of first use of the Mark in the challenged registration to reflect NT-MDT's date of first use on which Registrant can rely (viz., Jan. 31, 1999)."[32]

Under Section 7(e) of the Trademark Act, 15 U.S.C. § 1057(e), a registration may be amended "for good cause." When a registrant seeks "to prove a date of first use

---

[30] *Id.* at ¶¶ 1-10, 30 TTABVUE 6-7.

[31] *Id.* at ¶ 10, 30 TTABVUE 7.

[32] Respondent's brief at 3, 36 TTABVUE 5. Respondent did not file a separate motion to amend her registration but embedded her motion in her brief. "In general, all motions should be filed separately, or at least be captioned separately, to ensure they receive attention. A party should not embed a motion in another filing that is not routinely reviewed by the Board upon submission." TBMP ¶ 502.02(b).

earlier than the date alleged in its application for registration …, its proof of that earlier date must be 'clear and convincing.'" *See Bass Pro Trademarks LLC v. Sportsman's Warehouse, Inc.*, 89 USPQ2d 1844, 1856 (TTAB 2008) (citing *Hydro-Dynamics Inc. v. George Putnam & Co.*, 811 F.2d 1470, 1 USPQ2d 1772, 1773 (Fed. Cir. 1987) (dates of first use earlier than that alleged in the application is a change of position from one "considered to have been made against interest at the time of filing the application," and therefore requires enhanced proof); *Ilco Corp. v. Ideal Sec. Hardware Corp.*, 527 F.2d 1221, 188 USPQ 485, 488 (CCPA 1976)).

Respondent's motion raises multiple issues; (i) is the motion in violation of the parties' stipulation? (ii) if not, is the motion timely? (iii) if timely, does Respondent's motion comply with the Trademark Rules? and (iv) has Respondent met her burden of demonstrating that she is entitled to amend her registration? We address these questions below.

### A. Is the motion in violation of the parties' stipulation?

Although Respondent agreed that Part I of her brief would address Petitioner's "non-use in interstate commerce claim directed to Kozodaeva's statement of use and any time beyond the filing date of the statement of use,"[33] Respondent flipped the ordering of her brief[34] and first addressed in Part I Petitioner's claims "pertain[ing] to the ownership of the disputed mark, priority of rights between the parties, and

---

[33] Stipulation ¶ 2, 30 TTABVUE 3.

[34] Respondent maintains that "Registrant's response is more logically sequenced and easier to follow for the Board's and Petitioner's benefit …." Respondent's brief at p. 1, 36 TTABVUE 3.

abandonment by CJSC NT-MDT"[35] and then addressed in Part II Petitioner's "non-use in interstate commerce claim directed to Kozodaeva's statement of use and any time beyond the filing date of the statement of use."[36] Her motion to amend her registration came in Part II of her brief.

Petitioner argues that Respondent's motion violates her agreement that Part II of her brief would be limited to addressing "the ownership of the disputed mark, priority of rights between the parties, and abandonment by CJSC NT-MDT."[37] According to the stipulation, "Kozodaeva cannot raise [in Part II of her brief] any new arguments or include any additional supporting materials pertaining to any claim in the second part of NT-MDT's original opening brief it filed on March 13, 2020, or any defense in the second part of Kozodaeva's brief she filed on May 5, 2020, nor may the Board consider any."[38]

We find that Respondent's arguments regarding acquiring rights by assignments and her related motion pertain to the issues raised in Part I of Petitioner's brief. Respondent hence has not materially breached the stipulation. Despite the flipped ordering of the brief and Respondent's motion, Petitioner ably submitted evidence and arguments in its reply.

---

[35] Stipulation ¶ 2, 30 TTABVUE 3.

[36] *Id.* at ¶ 2, 30 TTABVUE 3.

[37] *Id.* at ¶ 2, 30 TTABVUE 3.

[38] *Id.* at ¶ 3, 30 TTABVUE 3.

**B. Is the motion timely?**

Respondent filed her proposed amendment during what is, in essence, the trial period. "When a motion to amend an application or registration in substance is made without the consent of the other party or parties, it ordinarily should be made prior to trial, in order to give the other party or parties fair notice thereof. An unconsented motion to amend that is not made prior to trial, and which, if granted, would affect the issues involved in the proceeding, normally will be denied by the Board unless the matter is tried by express or implied consent of the parties pursuant to Fed. R. Civ. P. 15(b)." TBMP § 514.03. Because the arguments Respondent makes as to why she is entitled to amend her registration to an earlier date of first use and first use in commerce are essentially the same arguments Respondent relies on in explaining why she is the owner of her mark by virtue of several assignments, we find that the matter has been tried by the implied consent of the parties. Despite Petitioner's protest to the contrary,[39] we find that Petitioner is not prejudiced by our consideration of Respondent's motion to amend.

**C. Did Respondent comply with the Trademark Rules?**

A request to amend a registration under Trademark Rule 2.173(b), 37 C.F.R. § 2.173(b) must (a) include the fee required by Trademark Rule 2.6(a)(11), 37 C.F.R. § 2.6(a)(11), and (b) be verified and signed in accordance with Trademark Rule 2.193(e)(6), 37 C.F.R. § 2.193(e)(6). *See also* TRADEMARK MANUAL OF EXAMINING

---

[39] Reply brief at p. 4, 41 TTABVUE 5. Petitioner only argues that this proceeding would be needlessly prolonged. We fail to see how it will be needlessly prolonged because the parties have agreed to our resolution of all factual disputes under their stipulation.

PROCEDURE ("TMEP") § 1609.01(b) (Oct. 2018) ("The request for amendment must be signed and verified (sworn to) or supported by a declaration under 37 C.F.R. §2.20 by the individual owner of the registration, someone with legal authority to bind a juristic owner (e.g., a corporate officer or general partner of a partnership), or a qualified practitioner." (citing Trademark Rules 2.173(b)(2) and 2.193(e)(6), 37 C.F.R. §§ 2.173(b)(2) and 2.193(e)(6)). Respondent has not filed the fee or a verified statement and hence has not complied with the Trademark Rules.

### D. Merits of the motion.

Despite Respondent's failure to file a fee and a verified statement, we consider the merits of the motion because the parties have fully briefed it in this proceeding. An amendment to a registration to claim earlier dates of first use amounts to an enlargement of a registrant's rights. Such a registrant has a "heavy burden of proof" in attempting to establish a date of first use prior to that stated in its registration. *Stanspec Co. v. Am. Chain & Cable Co.*, 531 F.2d 563, 189 USPQ 420, 424 n.10 (CCPA 1976). As stated above, Respondent must establish by clear and convincing evidence that she is entitled to dates of use earlier than those set forth in her registration. *See Bass Pro Trademarks*, 89 USPQ2d at 1856; *see also Cont'l Gummi-Werke AG v. Cont'l Seal Corp.*, 222 USPQ 822, 825 n.4 (TTAB 1984) ("[A] party who seeks to show an earlier date of use than that claimed in its application or registration is under a 'heavy burden' in that the proof must be clear and convincing (although it would appear to us that evidence of any date of first use is not likely to be persuasive unless it is clear and convincing).").

Respondent relies on the following three agreements as support for her claim of 1999 as her date of first use and first use in commerce:

● Ownership Transfer Agreement dated April 2, 2018 between NT-MDT Europe B.V.[40] and Techno-NT;

● Transfer of bankruptcy assets of MT-MDT CJSC on March 7, 2019 to Ms. Yakovleva; and

● Trademark Purchase Agreement dated March 24, 2019 between Ms. Yakovleva and Techno-NT.

Respondent explains the genesis of the three agreements:

In 2018, Registrant was under the impression that NT-MDT Europe B.V. held some rights to the trademarks of NT-MDT CJSC, which was declared bankrupt by the decision of the Moscow Arbitration Court dated July 19, 2017 …. That is, Registrant believed that some trademarks of NT-MDT CJSC had been assigned or licensed to NT-MDT Europe B.V. before the bankruptcy and, as such, NT-MDT Europe B.V. held some trademark rights. This belief was confirmed by a Permission of Use dated June 1, 2017, before the bankruptcy declaration, from NT-MDT Europe B.V. to Dimitry Kozodaev, Registrant's spouse, wherein Mr. Kozodaev received the right to use all of the intellectual property of NT-MDT Europe B.V. for running his own business. … In it, NT-MDT Europe B.V. coveys to Mr. Kozodaev the right to "use of the name NT-MDT and the trademark NT-MDT for registration of a new company and company website." However, not being an insider of either entity (NT-MDT CJSC or NT-MDT Europe B.V.), Registrant did not know definitively what rights were held by NT-MDT CJSC and which were held by NT-MDT Europe B.V., but instead relied upon information available to her at the time (viz., in 2018) based upon a reasonable belief developed after examination of all evidence available to her, including the Permission of Use from 2017 and information from the internet ….

*** 

Moreover, Registrant did have knowledge that Alexander Bykov was the CEO of NT-MDT CJSC for quite some time and NT-MDT Europe B.V. It was in mid-2018 that Mr. Bykov approached me about assigning ownership of NT-MDT Europe B.V.'s rights to the NT-MDT Trademark.

---

[40] "NT-MDT Europe B.V. … belonged to the NT-MDT family of companies." Alexander Bykov Declaration ¶ 4, 36 TTABVUE 100.

Registrant accepted the opportunity to accept such ownership. Registrant reviewed an agreement drafted by him, which is the Ownership Transfer Agreement …. Registrant discovered that in such agreement, NT-MDT Europe B.V. represented that it owned the NT-MDT Trademark and, as expressed by NT-MDT Europe B.V., "unlimited rights to use this Trademark in the United States of America (using since 1999), European Union (using since 1996), India (using since 1999), China (using since 2000), Japan (1999), Australia (2001), Korea (1999), Taiwan (1998)." … As a result of singing [sic] the agreement, it was my firm belief that Registrant held the legitimate rights to use the NT-MDT Trademark in the United States.

However, Registrant later discovered that, as part of the assets comprising the bankruptcy estate of NT-MDT CJSC, the NT-MDT Trademark, including the rights to use the NT-MDT Trademark in the United States, was identified. Specifically, Registrant discovered from discussions with Ms. Anastasia Aleksandrovna Yakovleva, who is the sister of Registrant's spouse, Mr. Dimitry Kozodaev, that the Russian bankruptcy trustee, Mr. Rashid Dzhaubaev, had identified the NT-MDT Trademark as being part of the bankruptcy estate of NT-MDT CJSC. Discovering that there was a possibility that the rights to the NT-MDT Trademark, including those in the United States, were not conveyed to me by virtue of the Ownership Transfer Agreement from NT-MDT Europe B.V. in 2018, Registrant requested that Ms. Yakovleva make every effort to acquire as many of NT-MDT CJSC's assets as she could. Thankfully, Ms. Yakovleva was successful in acquiring many assets, including the NT-MDT Trademark and the rights to use the trademark in the United States. Registrant was provided with a notarized, translated copy of Agreement of Purchase [of] the Properties of Closed Joint Stock Company "Nanotechnology-MDT" (NT-MDT CJSC)" by Ms. Yakovleva …. In it, the Buyer, Ms. Yakovleva, acquired, on March 7, 2019, "the right to exclusively use the designs, patents, trademarks of the Closed Joint Stock Company "Nanotechnology-MDT" (NT-MDT CJSC) for the implementation of entrepreneurial activities, including the development of equipment and control software and use and register the trademark NT-MDT outside the Russian Federation - in the United States of America (use since 1999), European Union (use since 1996), in China (use since 2000) and India (use since 1999)". … Registrant thereafter acquired these rights from Ms. Yakovleva for Registrant's sole proprietorship Techno-NT pursuant to a Trademark Purchase Agreement dated March 24, 2019 …. Specifically, in this Trademark Purchase Agreement, Registrant acquired "exclusive rights to the Assignee [viz., Registrant] to use and register the trademark outside the Russian Federation – in the United States of America (first use since

1999), European Union (first use since 1996), in China (first use since 2000) and India (first use since 1999)." … By virtue of both being the assignee on both the (i) Ownership Transfer Agreement, whereby any rights to the NT-MDT Trademark, including rights to use and register the same in the United States, held by NT-MDT Europe B.V. and (ii) the Trademark Purchase Agreement, whereby any rights to the NT-MDT Trademark, including rights to use and register the same in the United States, held by NT-MDT CJSC, Registrant believed, in good faith, that she held the right to register and use the NT-MDT Trademark in enumerated geographies, one of which was and is the United States.[41]

We now consider whether Respondent may rely on the bankruptcy transfer and the two additional agreements, beginning with the Ownership Transfer Agreement.

### 1. Ownership Transfer Agreement

The April 2, 2018 agreement is "between NT-MDT Europe BV … represented by the Director and Owner Mr. Alexander Bykov, ("Assignee"), and Techno-NT … represented by Director and Owner Mrs. Irina Kozodaeva ("Assignor")."[42] While Ms. Kozodaeva is identified as the Assignor, not the Assignee, in the body of the agreement, Ms. Kozodaeva signed the agreement as "Assignee" and Mr. Bykov signed the agreement as "Assignor." (Alexander Bykov has been Director and Sole Owner of NT-MDT Europe BV from December 2006.)[43] In view of the parties' representations in their briefs and the identification of the parties in the signature portion of the

---

[41] Respondent's Response to Interrog. No. 58, 37 TTABVUE 63-66.

[42] Petitioner's Exh. O, 35 TTABVUE 456-59.

[43] Alexander Bykov Declaration ¶ 5, 36 TTABVUE 100.

agreement, we find that NT-MDT Europe B.V. was the assignor and Techno-NT was the assignee of the property identified in the agreement.[44]

Paragraph 2 of the agreement transfers "Assigned Property" to Techno-NT. "Assigned Property" includes:

6. NT-MDT Trademark NT-MDT including unlimited rights to use this Trademark in United States of America (using since 1999), European Union (using since 1996), India (using since 1999), China (using since 2000), Japan (1999), Australia (2001), Korea (1999), Taiwan (1998).

Respondent has established that the agreement transfers any rights that NT-MDT Europe B.V. had to the mark to Techno NT, Respondent's sole proprietorship. We thus must determine the source of the rights to the mark identified in Paragraph 6 transferred by NT-MDT Europe B.V., which allegedly originated with the original user of the mark, NT-MDT CJSC.

Alexander Bykov states in his Declaration:

> As the CEO of NT-MDT CJSC during April 2006-September 2015, I gave NT-MDT Europe B.V., the subsidiary of NT-MDT CJSC, the right to use the Mark in the EU, U.S., China, and other countries in its sales and marketing activity. This license was executed in writing on October 23, 2008 and a true and correct copy of it is attached hereto as Exhibit 19.[45]

---

[44] NT-MDT Europe B.V. should not be confused with NT-MDT B.V., established by Dimitry Kozodaev on June 5, 2018 and owned by Mr. Kozodaev. Declaration of Dimitry Kozodaev ¶¶ 1 and 6, 36 TTABVUE 47.

[45] Alexander Bykov Declaration ¶ 127, 36 TTABVUE 119.

Exhibit 19 – which Alexander Bykov characterizes as a license, not an assignment, and which is silent about any good will represented by the mark - is duplicated below:[46]



Nuenen, 23rd October 2008

To: Dr. Julia Alexeeva,
CEO of NT-MDT Europe BV

### DECLARATION

**Hereby I**, Alexander Bykov, CEO of NT-MDT Co., a corporation organized and existing under the laws of the Russian Federation, with its head office located at Building 100, Zelenograd, 124482, Moscow, Russia

**DECLARE** that the company NT-MDT Europe B.V., being a subsidiary undertaking and existing under the laws of the Netherlands, with its head office located at: De Pinckart 54, 5674 CC Nuenen, The Netherlands and represented by Julia Alekseeva, CEO NT-MDT Europe B.V., has fully rights to use all intellectual property of NT-MDT Co. including the NT-MDT trademark.

NT-MDT Europe B.V. has fully rights to use NT-MDT trademark and intellectual property in EU, US, CHINA and other countries by publishing or reprinting in whole or in part picture, endorsement or quotation to increase marketing activity.

CEO of NT-MDT Co.
Alexander Bykov

Manufacturer of Scanning Probe Microscopes, silicon cantilevers and calibration gratings
Solver™, SMENA™, ResonantMode™ are trademarks of NT-MDT Co

KOZ3342

---

[46] *Id.* at Exh. 19, 36 TTABVUE 524.

Ten years later, Alexander Bykov states that "[i]n April 2018, [he] approached Irina Kozodaeva about assigning ownership of NT-MDT Europe B.V.'s rights to the Mark as it was winding up operations. To that end, [he], on behalf of NT-MDT Europe B.V. as the CEO and Owner at the time in April 2018, entered into an agreement with Techno-NT, acting through Irina Kozodaeva, whereby NT-MDT Europe B.V. would assign its rights to the NT-MDT Mark to Techno-NT."[47] Alexander Bykov does not state how NT-MDT Europe B.V. obtained its rights, especially after the "Declaration" in 2008 which identifies "rights to use" and says nothing about good will.[48]

We thus turn to the declaration of Victor Bykov, who was co-owner of NT-MDT CJSC and owner of NT-Instruments BV, another entity registered in the Netherlands. He states:

> At no time did NT-MDT CJSC ever assign U.S. common law rights to any NT-MDT Europe B.V. or any other entity, and at no time did NT-MDT Europe B.V. ever own or acquire any U.S. rights in the Mark either from CJSC or by manufacturing and shipping AFM goods to the U.S.[49]

We find that Respondent has not established through clear and convincing evidence that she obtained rights to the registered mark through the Ownership

---

[47] *Id.* at ¶ 128, 36 TTABVUE 119.

[48] "A registered mark or a mark for which an application to register has been filed shall be assignable with the good will of the business in which the mark is used, or with that part of the good will of the business connected with the use of and symbolized by the mark." Section 10 of the Trademark Act, 15 U.S.C. § 1060(a)(1). "[A] mark may be transferred only in connection with the transfer of the goodwill of which it is a part." *Visa, U.S.A., Inc. v. Birmingham Tr. Nat. Bank*, 696 F.2d 1371, 216 USPQ 649, 651 (Fed. Cir. 1982).

[49] Victor Bykov Affidavit ¶ 57, 35 TTABVUE 489.

Transfer Agreement and may not rely on the Ownership Transfer Agreement to claim a use date earlier than that identified in her registration. Respondent has not explained how NT-MDT Europe B.V. received its rights, Victor Bykov states that NT-MDT Europe B.V. never was assigned the original user's U.S. common law rights, and Respondent has acknowledged that "there was a possibility that the rights to the NT-MDT Trademark, including those in the United States, were not conveyed to me by virtue of the Ownership Transfer Agreement from NT-MDT Europe B.V. in 2018."[50]

### 2. Bankruptcy Purchase Agreement

Victor Bykov testified that in 2015, NT-MDT CJSC filed for bankruptcy in Russia, and that the document submitted as Petitioner's Exhibit K is the official bankruptcy asset list.[51] The list does not refer to any U.S. trademark rights, and does not identify the mark involved in this proceeding. It does, however, identify Russian Trademark Registration No. 188978 (issued October 21, 1999) for the following mark:



On March 7, 2019, Mr. Dzhaubaev, the bankruptcy trustee, sold certain NT-MDT CJSC assets to Ms. Yakovleva. The Purchase Agreement states:

> 1.3. The assets subject to sale hereunder shall be sold as Lot l and they shall include: … intangible assets, fixed

---

[50] Respondent's Response to Interrog. No. 58, 37 TTABVUE 63-66.

[51] Victor Bykov Declaration ¶¶ 53-55, 35 TTABVUE 489.

assets, financial investments of the debtor. All property assets are listed in Annex 1 hereto.

\*\*\*

1.5 Acquisition by the Buyer of a property of the Closed Joint Stock Company "Nanotechnology-MDT" (NT-MDT CJSC) gives him the right to exclusively use the designs, patents, trademarks of the Closed Joint Stock Company "Nanotechnology MDT" (NT-MDT CJSC) for the implementation of entrepreneurial activities, including the development of equipment and control software and use and register the trademark NT-MDT outside the Russian Federation - in the United States of America (use since 1999), European Union (use since 1996), in China (use since 2000) and India (use since 1999).[52]

Annex 1 is essentially identical to Exhibit K. The entirety of Respondent's mark in the '336 registration is not identified in either Exhibit K or Annex 1.[53] Further, U.S. rights are not identified in the list of bankruptcy assets but appear in the March 7, 2019 Purchase Agreement. Because of these omissions, we find that Ms. Yakovleva did not obtain rights to the mark of the '336 registration through the Bankruptcy Purchase Agreement, and that Respondent may not claim rights to her registered mark through the Bankruptcy Purchase Agreement.

---

[52] R. Dzhaubaev Declaration, Exh. 1, 36 TTABVUE 89.

[53] Respondent mentions tacking in her brief. (36 TTABVUE 34). Tacking is allowed "when the original and revised marks are 'legal equivalents' in that they create the same, continuing commercial impression." *Hana Fin., Inc. v. Hana Bank*, 135 S. Ct. 907, 113 USPQ2d 1365, 1366 (2015). Assuming the design mark that is the subject of Russian Trademark Registration No. 188978 was used in the United States, Respondent may not tack any prior U.S. use of that mark onto any use of the mark in the '336 registration because it does not include the lettering of Respondent's composite word and design mark. The two marks do not convey the same commercial impression.

### 3. Trademark Purchase Agreement

This March 24, 2019 agreement is between Ms. Yakovleva and "Techno-NT, One Man Company … represented by Irina Sergeevna Kozodaeva" and states in pertinent part:

> 1. SCOPE
>
> 1.1. The Assignor having the exclusive right to the Trademark 188978 (hereinafter referred to as the Trademark) shall assign and the Assignee shall assume the exclusive right to the Trademark with respect to any and all goods and services as in the certificates.
>
> 1.2. The exclusive right for the Trademark that is assigned by the Assignor is the exclusive right to use and dispose of the Trademark.
>
> 1.3[.] The exclusive right for the Trademark that is assigned by the Assignor gives exclusive rights to the Assignee to use and register the trademark outside the Russian Federation - in the United States of America (first use since 1999), European Union (first use since 1996), in China (first use since 2000) and India (first use since 1999).
>
> \*\*\*
>
> 7.5. The exclusive right for the Trademark shall pass to the Assignee on the conclusion hereof as well as the right of first use in the United States of America (first use since 1999), European Union (first use since 1996), in China (first use since 2000) and India (first use since 1999).[54]

The Trademark Purchase Agreement defines "Trademark" by reference to the number of the Russian registration discussed above, which does not show the mark in the '336 registration. Because Respondent has not demonstrated that Ms. Yakovleva acquired rights to the mark of the '336 registration, and because the

---

[54] Petitioner's Exh. O, 37 TTABVUE 63-66.

Trademark Purchase Agreement does not specify or otherwise reflect that the mark involved therein is the same as the mark of the '336 registration, Respondent has not established that she obtained rights to her mark through the Trademark Purchase Agreement.

### E. Conclusion

In sum, Respondent admits that she did not use the mark she registered in the United States prior the expiration of the time for filing the statement of use, and she has not demonstrated through clear and convincing evidence that she can establish use of the mark prior to the first use date claimed in the registration by reliance on the rights of any other users of the same mark as their successor-in-interest. We therefore sustain Petitioner's claim of nonuse in commerce prior to the expiration of Respondent's period for filing a statement of use. Respondent's motion to amend her registration is denied.

## VII. Remaining Claims

Because we have found that Respondent's registration may be cancelled under one of Petitioner's claims, we need not reach Petitioner's other claims for cancellation of Respondent's registration or Respondent's affirmative defense of abandonment[55] directed to one or more of Petitioner's remaining claims. *See Multisorb Techs., Inc. v. Pactiv Corp.*, 109 USPQ2d 1170, 1171 (TTAB 2013) ("[T]he Board … generally use[s]

---

[55] We found, for purposes of statutory entitlement to petition to cancel, that Petitioner established it is currently using its mark. *Supra* at pp. 10-11. Given that Respondent's registration will be cancelled based on the nonuse ground, and we do not reach any remaining grounds, we need not address the abandonment affirmative defense.

its discretion to decide only those claims necessary to enter judgment and dispose of the case. … More specifically, the Board's determination of registrability does not require, in every instance, decision on every pleaded claim.").

**Decision:** The Petition to Cancel is granted. Registration No. 5753336 will be cancelled in its entirety in due course.